# Marsh *versus* Weckerly.

The tenant of a house which had encroached on the adjoining lot more than twenty-one years, was informed that a survey had been made by the adjoining owner with the intention of building on the true line. He declined examining it and expressed his satisfaction, and directed the wall to be put up on the line. After the work was commenced the license became irrevocable, and the tenant cannot recover in ejectment for the land occupied by the new party wall.

Where a frame building is erected whose wall extends nine inches over the line of the land, and afterwards a cellar is dug and the wall placed on the line, it seems that there is no adverse possession by the occupation of the encroachment by the wall of the house.

ERROR from the Common Pleas of *Philadelphia :*

This was an ejectment for a strip of land nine inches wide in front, thirteen inches at the rear end, and extending forty feet in depth.

The plaintiff was the assignee of a lease for ten thousand years, dated in 1784. Prior to 1807, a frame building was erected upon the lot, the wall of which extended a few inches over the boundary line.

In 1812, a cellar was dug under this house, the wall of which stood a few inches within the line of the house.

The defendants claimed title by conveyance under the lessor of the plaintiff. Before he commenced building on his lot he procured the District regulator to make a survey. By this it was ascertained that five inches of the plaintiff's cellar wall stood on the defendant's lot. The plaintiff was notified of this fact before the building was commenced, and requested to meet on the ground and ascertain the correctness of the survey. This he declined to do, expressing his satisfaction with any survey made by the regulator, and telling the defendant to go on and put the wall on the line, doing as little damage as possible. The partition wall was erected on the old cellar wall, and to do this about nine inches of the plaintiff's wall was cut away.

After the defendant commenced his work the plaintiff gave him notice to desist and brought this action.

PARSONS, J., instructed the jury that the plaintiff had a good

title by adverse possession, and that he was not concluded by his assent to the survey of the regulator, unless he knew that a survey had been made of the defendant's lot only, and not also of his own lot.

*Hopkins,* for the plaintiff in error, contended there was no title acquired by the occupancy, and that the plaintiff was concluded by the survey, from which no appeal had been taken, and his license to the defendant to build accordingly.

*Brightly,* contra.—There was in fact no regulation. That requires a survey of both lots. If the plaintiff knew not of this omission he was not concluded by the assent under such a suppression of facts.

The opinion of the court was delivered by

Burnside, J.—The title of the parties to their respective lots is not in controversy. Neither of their titles is impeached. Both of them derive their title from the same source. Sarah Masters owned both the lots, as well as the lands adjacent, which she derived from her father's estate. The dispute is one of boundary; each has his full quantity. More than twenty-one years before the institution of this ejectment, the then owner of the Weckerly lot erected a frame house in the woods, without cellar or chimney, and placed one side of it about five inches over the side of his lot on the ground of his lessor. The next owner, when he came to dig and wall the cellar under the house, and erect a chimney, was better informed as to the boundary, and he built the cellar wall in the proper place. On this cellar wall Marsh placed the wall of his brick house in 1845. The wall is found to be five inches on the Marsh lot, and four inches on the plaintiff's lot. But before the defendant commenced his building, he had the regulator and surveyor of the district to lay off his lot. It was in evidence that Morris, the builder of Marsh, before he did any work on the ground, called on Weckerly and wife, and informed them how the surveyor had located the line, and requested them to meet him on the ground, in order to test its correctness, before he commenced the building. They declined doing so; saying that *if Mr. Moore had regulated the lot, they were satisfied with the regulation, and directed him to put the wall on the line, and do as little damage as possible.* The builder went on, and erected a nine inch wall on the wall of the cellar, which is proved to be five inches on Marsh's and four on the plaintiff's lot. In erecting this wall, he was compelled to cut down the weather-boarding of the plaintiff's house, which extended over the cellar wall; and, after the builder had made some progress, the plaintiff began to complain, and, when the wall was erected, brought his ejectment to recover the

[Marsh *v.* Weckerly.]

five inches which the house extended over this lot.  He relied on
his length of possession, and, on that ground, the learned Judge
charged the jury "that if the plaintiffs and those under whom
they claimed, did go over the boundaries of the land mentioned in
the lease or deed, a possession of that not embraced in the lease
would be *adverse* to the original grantor ; and if such was the fact,
and that which the defendants have taken from the plaintiffs was
outside of the boundaries of said deed of lease, then, by the statute
of limitations they would obtain a title."  He further instructed
them that, if the plaintiff was not informed that the surveyor had
only surveyed the lot of Marsh, and had not also surveyed the
plaintiff's lot, they were not bound by the consent they had given
to Mr. Morris to go on and build the wall, according to the line
designated by the surveyor.

To this charge we cannot accede.  We are unable to discover
any act of any owner of the plaintiff's lot tending to shew that
they intended to claim any ground outside of their original lease,
but we think every fact proved strongly negatives such a claim.—
When the plaintiff's frame house was erected, he had a right to
place the one-half of the party wall on the owners of the defend-
ant's ground.  The frame building was, in its nature, but a tem-
porary construction.  When the subsequent owners of the plain-
tiff's lot erected the chimney, and built the cellar wall, they were
careful to place them on the proper ground, so that when the ad-
joining lot was improved they might properly build on that cellar
wall, and against the chimney.  The plaintiff shewed every confi-
dence in the surveyor of the district.  They were satisfied that he
should fix the line.  When they were informed how he had done
it, they declined to go and see it, and directed the defendant's
builder to put the wall on the regulator's line.  It was so done,
and the plaintiff got a brick wall to this side of his house, in the
place of a wooden one.  After this license, and after the defend-
ant had expended money in this erection, he changes his mind,
and designs to prostrate the defendant's house, or force him to
pay for the license he had himself given. ·

Apply to this the well settled principles in equity which will
not allow one, who, knowingly, (though he does it passively, by
looking on,) suffers another to purchase and spend money on land
under an erroneous opinion of title, without making known his
claim, to exercise his legal right against such person : Carr *vs.*
Wallace, 7 *Watts* 394.  Equity will not, on the mere ground of
silence, relieve one who is perfectly acquainted with his rights, or
has the means of becoming so, and yet wilfully undertakes to pro-
ceed in expending money on the lands of another without obtain-
ing or asking his consent : Crest *vs.* Jack, 3 *Watts* 240.  But,
in this case the plaintiffs have not a foot to stand on.  They en-
courage the defendant to proceed to build on the line fixed by the

[Marsh *v.* Weckerly.]

proper authority, and in the manner authorized by law.   After the building is commenced as the plaintiffs advised, they wish it to be stopped, under a new discovery, a gross misconstruction of the statute of limitations.   Dear as that statute is to my heart, I cannot sanction the construction given to it by the Common Pleas.— The possession must be adverse and hostile to the legal title, and so, unbroken, for twenty-one years, to give title against the legal owner.   Here there was not a single act done on the ground, or a single declaration of any owner of the plaintiff's title, of that character.   No owner of that title did a single act which shewed that he claimed any of the ground adjoining to his lot, nor the defendant, until the mischief was put in his head to revoke the license, and, for the first time, set up the statute, after the building and party wall had been commenced.   It was not such an actual adverse claim and possession as the statute will give title to beyond the lease and deeds under which he claims, and the jury ought to have been so instructed.

The judgment reversed, and a *venire de novo* awarded.