Thomas v. Pullis, et al.

JAMES P. THOMAS, Trustee of ANTOINETTE THOMAS, *et al.*, Plaintiff in Error, *vs.* JOHN PULLIS, *et al.*, Defendants in Error.

56  211
97  188
56  211
120  388
120  573

1. *Constitution—Title of infant—Power of legislature to pass.*—The legislature has power to authorize a guardian or administrator, or any one else named in the act, to pass the title of an infant, or to compromise an unsettled claim upon such terms as the parties may agree upon.

2. *Estoppel—Improvements upon land, etc.*—A deed of land, although containing a false description of the property, when taken in connection with the fact that for fifteen years after its execution, the grantor lived in sight of the premises and saw valuable improvements erected thereon, was held sufficient to work an estoppel as against the grantor.

3. *Infancy—Ratification of deed after majority—Acquiescence.*—The mere inaction of an infant after coming of age will not constitute a confirmation of a a deed made by him during infancy. (Huth vs. Carondelet & Marine R'way Co., *ante*, p. 202.)

*Error to St. Louis Circuit Court.*

*Glover & Shepley*, for Plaintiff in Error.

I. The acts of the legislature affecting the property in controversy were void as conferring arbitrary power over the property of the infant, Antoinette Rutgers. Her property was free from legislative touch except for her protection and use. (Rice vs. Parkman, 16 Mass., 326; Kibby vs. Chitwood, 4 Mon., 71; Stewart vs. Griffith, 33 Mo., 23; Carroll vs. Olmstead, 16 Ohio, 261; Cochran vs. Van Surley, 20 Wend., 365, 373; Leggett vs. Hunter, 19 N. Y., 445; Cool. Const. Lim., 103; Fullerton vs. McArthur, Grants. Cas., 232; Estep vs. Hutchman, 14 Serg. & R., 438; Gannett vs. Leonard, 47 Mo., 205.)

When a law is enacted for handling the property of infants, and shows that it was made for the benefit of the owner, it must be treated as made in the performance of lawful governmental duty and power. But if a law is passed that takes A.'s property from him and gives it to B. in express terms; or takes from A. his property, not for his benefit; or takes it from A. and places it beyond his reach, and provides him no security and no remedy; or converts his fee simple abso-

lute estate into a contingent remainder, such a law is not made in the exercise of governmental authority or duty, and is void. (See Norman vs. Herst, 5 W., 173; Jackson vs. Lyon, 9 Cow., 664; Bloodgood vs. M. & H. R. R. Co., 18 Wend., 9.) When property is divested there must be compensation or some sure and adequate remedy to procure it. (Rockwell vs. Nearing, 35 N. Y., 202; Powers vs. Bergen, 6 N. Y., 358.)

If it be unconstitutional to seize upon the property by force, not less flagrant is the injustice of pretending to exercise the constitutional power of converting the property of an infant and using it for his benefit, by an act of legislation which virtually deprives him of his property without reference to compensation.

II. The legislature had no power to authorize Pelagie Rutgers to compromise the pending suit. (Taylor vs. Porter, 4 Hill., 140; King vs. Dedham, etc., 15 Mass., 447; Bebee vs. The State, 6 Ind., 515; Taylor vs. Place, 4 R. I., 336; Bowman vs. Middleton, 1 Bay, 252.)

*Cline, Jamison & Day*, for Defendants in Error.

I. The act of the legislature of Missouri authorizing certain minors, by their parents and guardians, to execute quit-claim deeds, approved February 11, 1847, Acts of 1847, p. 307, and the act amendatory thereto, approved February 27, 1851, Acts of 1851, p. 616, are not void or unconstitutional. (Stewart vs. Griffith, 33 Mo., 13; Gannett vs. Leonard, 47 Mo., 205; Highley vs. Barron, 49 Mo., 103; Davidson vs. Jahannot, 6 Metc., 388; Rice vs. Parkman, 16 Mass., 326; Sobiet vs. Massachusett's General Hospital, 3 Cush., 483; Clark vs. Van Surley, 15 Wend., 436; Cochran vs. Van Surley, 20 Wend., 365; Estep vs. Hutchman, 14 Serg. & R., 435; Wilkinson vs. Leland, 2 Pet., 627; Watkins vs. Holman, 16 Pet., 25; Leggett vs. Hunter, 19 N. Y., 445.)

II. Said Antoinette ratified and affirmed said deeds of compromise after she became of age and before she married * * * by living in the vicinity, seeing and knowing of the erection of valuable improvements on said lot in dispute, by the defendants,

and not notifying or informing them of her claim to said lots. (Highley vs. Barron, 49 Mo., 103; Wheaton vs. East, 5 Yerg., 41; Wallace vs. Lewis, 4 Harrington, 75; McNees vs. Swaney, 50 Mo., 392.)

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment, in which the value of the titles confessedly depended on two points; one involving the validity of certain acts of the legislature of Missouri, and the second—assuming their invalidity—whether there were in evidence facts sufficient to show a ratification of the supposed invalid acts, after the plaintiff became of age. The title of the plaintiff was based on a conveyance from Isabella Mackay, the widow of James Mackay, and the defendant's title came from the same source. There was a dispute in 1847, as to the right of Isabella Mackay to convey the land, and the chidren of James Mackay conveyed to one Rannells their title, and this controversy was unsettled when the acts of the legislature referred to were passed. There was also a claim on the part of the heirs of Arend Rutgers when the first act was passed. The act of 1847 is entitled: "An act to authorize certain minors, by their parents and guardians, to execute quit-claim deeds," and the body of the act is as follows: "Whereas, George Magwire, Marie Amelia, his wife, Ferdinand Saugrain and Eliza Dina, his wife, Ferdinand Provenchere, Anthony S. Robinson and Mary Frances Robinson, infant daughter and sole child of said Anthony S. Robinson and Sarah Eulalie, (late wife of Anthony S.), heirs and legal representatives of Arend Rutgers deceased, parties of the first part, Charles S. Rannells party of the second part, and Louis Rutgers and Pelagie, his wife, and Antoinette, infant daughter and sole child of said Louis and Pelagie Rutgers, of the third part, claim to hold conflicting titles to a certain tract of land, in the southern part of the City of St. Louis, in the State of Missouri, containing thirty-three arpents, more or less, which tract of land was bounded in the year 1825, (here the boundaries are given) being the same tract for which Isabella Mackay, widow of

James Mackey, made a deed to said Arend Rutgers; and whereas the parties of the first, second and third parts, for the purpose of compromising and settling said conflicting claims, have agreed to divide the said tract of land between said three parties according to terms equitable and just to all, and to give to each other a quit-claim deed for the portions allotted to each of said three parties, by the terms of said compromise, the parents and guardians of said minors acting for them; now therefore,

Be it enacted by the General Assembly of the State of Missouri, as follows:

Section 1. The said Anthony S. Robinson, father and guardian of said Mary Frances Robinson, is hereby authorized and empowered to execute and deliver to the said parties of the second and third parts, a quit-claim deed of the interest of said Mary Frances Robinson, in and to the portions of said land, allotted by said compromise to said parties of the second and third parts, and that the said Louis Rutgers, father of said Antoinette, (infant daughter and only child of said Pelagie and Louis Rutgers,) and Louis Clamorgan, next friend of said Antoinette, be, and they are hereby authorized and empowered, to execute and deliver to said parties of the first and second part, a quit-claim deed of all the interest of said Antoinette, (only child of said Louis and Pelagie Rutgers,) in and to said portions of said tract of land, allotted by the terms of said compromise to said parties of the first and second parts.

2. The conveyances to be made under the first section of this law, shall be submitted to the Probate Court of St. Louis county, for its consideration and approval.

The act of February 17, 1851, is as follows: It is entitled "An act to amend an act entitled an act," etc., approved February 11, 1847.

Section 1. That Pelagie Rutgers, mother of said Antoinette Rutgers, named in the act to which this is an amendment, and Louis Clamorgan, her next friend, are hereby authorized to make any arrangement of compromise, with any and all

parties claiming title to the property described in the preamble of said act, and are hereby empowered to make, execute and deliver quit-claim deeds to any or all such parties, which said deeds shall operate to convey all the rights, titles and interests of said Antoinette, in said property, or to such portions thereof as shall be thus conveyed, pursuant to any such arrangement of compromise, as herein contemplated, as effectually as the said Antoinette could do were she of lawful age and acting in the premises.

Sec. 2. In case either the said Pelagie Rutgers or Louis Clamorgan should die before this act shall be executed, the survivor of them is hereby empowered to execute the same; and in case both should die before the same is executed, then the St. Louis Circuit Court, shall appoint some competent person to execute the same.

Sec. 3. The second section of the act to which this is an amendment, is hereby repealed.

The controversy concerning the title, it seems, was between persons representing Mackay, the heirs of Arend Rutgers, and claimants under the deed and will of Arend Rutgers, to-wit: Louis Rutgers, Pelagie, his wife, and his daughter, Antoinette. Mackay's will authorized his wife to convey certain portions of his estate, under certain circumstances. A conveyance of the land in controversy was made by her, in 1825, to Arend Rutgers. Rutgers conveyed the land in 1826, to Leduc and Provenchere, as trustees, for the use of Louis Rutgers, a free mulatto boy living in their family. In 1834, Louis Rutgers and wife and said trustees conveyed this back to Arend Rutgers. About the same time Arend Rutgers and wife conveyed to Leduc and Magwire, trustees, for the use of Louis Rutgers during his life, and after his death, to the use of Pelagie, his wife, during her life, and after her death, for the use of the lawful children of said Louis, and in default of such children, to revert to said Arend Rutgers. The only child of Louis Rutgers and Pelagie, his wife, was Antoinette, who was an infant when the act above recited was passed. The mother, Pelagie, died in 1867, Louis having died in 1847.

M. P. Leduc, was dead in 1845, and a trustee was appointed in place of Magwire. Thomas, the plaintiff, was married to Antoinette in 1868.

The property in controversy, together with other portions of the thirty-three arpents, under the acts of the legislature above stated, and by virtue of the compromise recited, as in contemplation by said acts, was conveyed by Pelagie Rutgers, (her husband Louis being dead), acting for herself and her daughter Antoinette, to Edwin R. Mason, for $35,000.  On the same day Mason conveyed to trustees for Pelagie and Antoinette, certain portions of this tract, to the use of Pelagie, during her life, and if she should survive her daughter to her in fee, but if Antoinette survived, to Antoinette in fee, etc. Antoinette was of age in 1859.  Her mother left, by will, all her estate to the daughter.  The mother died in 1867, and the daughter married in 1868.  in 1859, Antoinette, when of age and unmarried, executed a deed to Henry Clamorgan, for lots, 13, 14 and 15, in Park addition, and described them as bounded North by lot 12, (the one now in dispute) "now owned by Pullis & Bro."  In the same year she executed to John J. Anderson, a deed for block 152, to which she was advised by her attorney, and valuable improvements were made on these lots—of which she was aware.  By the will of her mother, she also received $35,000, or $40,000, resulting from the compromise, and these facts are claimed to estop her now from denying the validity of the compromise.

The principal question in the case, is as to the validity of the two acts of the legislature, above recited.  There were three conflicting claims to the thirty-three arpents, and in two of the three there were infant parties.  A compromise had been agreed on, as the first act recites, and the act was simply to authorize the father or guardian, to pass the title of the minor claimant. The conveyances authorized, were made subject to the approval of the St. Louis Probate Court, by the first act.  The second act simply authorized the mother and the next friend of the infant, to effect any compromise and execute deeds, and in the event of the death of either, author-

Thomas v. Pullis, et al.

ized the survivor to act, and the approval of the Probate Court was dispensed with. These acts were claimed to be void.

There are three decisions of this court, on acts of a similar character, all agreeing to their validity. (Stewart vs. Griffith, 30 Mo., 13 ; Gannett vs. Leonard, 47 Mo., 205 ; Ship vs. Klinger, 54 Mo., 238.) In the last case the court refused to examine the question, on the grounds that vast amounts of property had been transferred on the faith of such acts. It is true, however, that the facts in each of the cases referred to, differed from those in the present case. In Gannett vs. Leonard, the property of the infants was wholly lost, to the amount of $60,-000, as the legislature had required no bonds of the person authorized to convey the title. Yet the title of the purchasers was upheld. The power of the legislature to authorize some one, guardian, administrator or any one else named in the act, to pass the title of an infant, seems to be settled, not only by the decisions of this court, but by the decisions of the courts of other States. The cases are cited in the briefs, and it is unnecessary to repeat them here. We see nothing in the peculiar facts of this case to distinguish it from the cases cited. That the minor's title in this case was, under the legislative authority, converted from a vested remainder to a contingent remainder, is very much relied on in the argument by counsel to show the invalidity of the acts. But in Gannett vs. Leonard, the infant's property was converted into nothing, and yet the title of the purchaser was sustained. It is a question of power, and whilst it is conceded that the legislature has no power to transfer A's property to B, or to authorize any one else to do so—supposing A and B, to be adults and competent to transact their own affairs—the legislature may authorize the guardian, father or mother of a lunatic, infant or idiot, to transfer the estate of the minor, lunatic or idiot. It will be observed that the title of Pelagie and her daughter Antoinette was a disputed one. That the claimants under Mackay and Rutgers, really had no valid title, is not important. This was ascertained after the decision of this court

in the case of Norcum vs. D'Oench, but it was a matter of conjecture before. The adults had an undoubted right to compromise. If the legislature has power to authorize third persons, guardians, fathers, mothers, etc., to convey the undisputed title of an infant, without regard to insuring the proceeds for the benefit of the infant, why should they be deprived of the right to authorize the compromise of an unsettled claim?

It is not pretended that under the last act of 1851, the deeds of Pelagie were not in strict conformity to the act, but the act is claimed to be unconstitutional, because it authorized Pelagie, the mother, to make such compromise as she pleased, and thus abandon the interests of her daughter who had a vested remainder after her life estate. This objection is untenable. The power being conceded, its exercise, in one form or another, is beyond the reach of judicial investigation. In the case of Gannett vs. Leonard (47 Mo., 205), Judge Bliss, said: "I have not known a case where the legality is made to depend upon the precautions adopted to secure to the beneficiary the proceeds of the sale. And in that case, where the title was unquestioned, the title of the infant or minor children was conveyed in conformity to the power granted, and the proceeds totally lost to the infants. Yet the title of the grantee was upheld. These decisions here and elsewhere, are based on the power of the legislature, where there is no constitutional restriction, to authorize the sale of lands belonging to minors, lunatics or idiots, by such persons as the legislature may designate. The restrictions and safeguards provided by the legislature must be complied with, but the validity of the law does not depend on the wisdom or propriety of these restrictions.

In this case Pelagie Rutgers was authorized to convey Antoinette's title, as effectually as Antoinette could do, were she of age; and it is now urged that Pelagie, in the conveyances she made under this act, and in the conveyances made to her, disregarded her daughter's interest, and converted a vested remainder, which Antoinette had, into a contingent remain-

der.   As the act gave her full power to compromise and con-
vey her daughter's title, we are unable to see how this change
in the interest of Antoinette could affect its validity.

Upon the second point, we think the acts of Antoinette,
after she arrived at full age, amounted to a ratification of the
compromise.   Her deed to John J. Anderson, in 1859, was
made under the advice of her attorney, who was fully inform-
ed of the acts of the legislature, and of the compromise made
by Pelagie under those acts.

The deed to Henry Clamorgan, describing the property
conveyed, as bounded by the lot now in dispute, and therein
stated to be owned by Pullis & Brother, may be regarded as
a mere declaration ; but these two deeds in connection with
the fact that for fifteen years after this, she lived in sight of
the property now sued for, and saw valuable improvements
on it, without any claim, are sufficient to constitute an estop-
pel.   The deed to Anderson was not simply an acquiescence
or a mere declaration, it was a positive act, based on a recog-
nition of the compromise—and conveying land conveyed to
her by the compromise—made upon due consultation with
her counsel, who was fully apprised of the condition of the
title.

We had occasion to examine this subject in the case of Huth
vs. Carondelet Marine Railway and Dock Company, *ante* p. 202
wherein the doctrine maintained in the early decisions of this
court, was re-affirmed—that the mere inaction of an infant
after coming of full age, would not constitute a confirmation.
But the present case falls within the principle in Ferguson vs.
Bell's administrators (17 Mo., 347), where the infant, after
attaining majority, received a part of the purchase money ;
and here a sale and conveyance of part of the land received
under the compromise would seem to be quite as clear and
distinct an act of affirmation as the reception of part of the
purchase money, especially when attended with an acquies-
cence of nearly fifteen years, with a full knowledge of the valu-
able improvements made on the lots sold.

Judgment affirmed.   The other judges concur.