EDWARD ACTON, Appellant, *v.* WILLIAM DOOLEY, Respondent.

### December 10, 1878.

A. and D. owned adjoining lots in a city addition. D. had his lot surveyed by the surveyor who laid out the addition, and commenced to build his house up to the western boundary-line. A., relying upon D.'s survey, measured off twenty-five feet westward, and built up to his western boundary-line, finishing his house months before D. finished his, and, by permission, used D.'s fence for the eastern wall of his coal-shed. Eight years afterward, A. discovered that D. encroached upon his lot four inches, and commenced an action of ejectment. *Held*, that these facts constitute an estoppel, and that A.'s ignorance of the true line was immaterial, the question being one of estoppel by acts *in pais*.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

FRANKLIN FERRISS and FISHER & ROWELL, for appellant: Estoppel.—*Boggs* v. *Merced*, 14 Cal. 367; *Glidden* v. *Struppler*, 52 Pa. St. 403; *Hill* v. *Epley*, 31 Pa. St. 334; *Taylor* v. *Zepp*, 14 Mo. 482; *Knowlton* v. *Smith*, 36 Mo. 507;

*Bales* v. *Perry*, 51 Mo. 449; *Smith* v. *Hutchinson*, 61 Mo. 83.

LUCIEN EATON, for respondent: Estoppel. — *Hart* v. *Giles*, 7 Cent. L. J. 47; *Soward* v. *Johnston*, 65 Mo. 102; *Melton* v. *Smith*, 65 Mo. 315; *Slagel* v. *Murdock*, 65 Mo. 522; *Betts* v. *Brown*, 3 Mo. App. 20; *Turner* v. *Baker*, 64 Mo. 218; *Dibble* v. *Rogers*, 13 Wend. 539; *Collins* v. *Rogers*, 63 Mo. 515; *Evans* v. *Snyder*, 64 Mo. 516; *Morgan* v. *Railroad Co.*, 96 U. S. 716; *Major* v. *Rice*, 57 Mo. 384; *Allen* v. *Sales*, 56 Mo. 28; *Hamilton* v. *West*, 63 Mo. 93; *Thomas* v. *Pullis*, 56 Mo. 211; *Dolde* v. *Vodicka*, 49 Mo. 98.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff is owner of lot 5 in city block 950, having a front of twenty-five feet on the north side of Carr between Twentieth and Twenty-first Streets, in the city of St. Louis. Defendant owns lot 4, which adjoins plaintiff's lot on the east. Defendant's lot was owned in 1866 by Michael Lynch, who then built on it a three-story dwelling, at an expense of more than $13,000. In 1872, Lynch sold and conveyed to the defendant, who now resides on the premises. The addition in which these lots lie was originally surveyed and laid out in blocks and lots by William H. Cozzens, surveyor. When Lynch was about to build, he got Cozzens to survey and mark out the lines of his lot, and thereupon laid his foundation up to the western boundary-line thus established. He also built a fence on the same line to the alley in the rear. Before the superstructure of the house was begun, the plaintiff, having recently purchased lot 5, measured twenty-five feet westwardly from Lynch's foundation-wall, and there establishing his own western boundary, built up to it the dwelling in which he afterwards resided. There was a space of about three feet between plaintiff's east wall and the west wall of Lynch's building. The plaintiff, in thus fixing the dimensions of his lot, acted upon advice that

he would thus save the expense of a survey by Cozzens which would only give him the same result. This was in the year 1867. Plaintiff's house was finished and occupied several months before that of Lynch. Plaintiff built a coal-shed on the rear part of his lot, using for its eastern wall the fence of Lynch by his permission. In 1875, the plaintiff first learned, from a survey made by Julius Pitzman, county surveyor, that the west line of defendant's occupancy was four inches too far west, and that the west wall of his own house encroached to the same extent on the lot of his neighbor on the west. He informed defendant of the discovery, and, failing to obtain a satisfactory settlement of the difficulty, instituted this suit in ejectment for possession of the strip four inches wide covered by the defendant's west wall and fence. The cause was tried before the court sitting as a jury, and judgment was rendered for the defendant.

By the shape in which the record comes before us but one question is presented for our examination. No exceptions were saved to the admission or exclusion of testimony. The defence of limitation was cut off by an instruction given for the plaintiff. There was a direct conflict in the testimony touching the location of the true dividing-line ; and as the court declared the law to be that if the strip of ground sued for was within the limits of defendant's lot, according to the original monuments and landmarks of the location, then the plaintiff could not recover, the issue on that point is settled, and the finding of fact is beyond our review. From the instructions given and refused, it is apparent that the court found in the acts and omissions of the plaintiff an estoppel barring his recovery. Whether those acts and omissions were sufficient to create an estoppel, is the question to be determined.

Our attention is firstly drawn to the circumstance that when the plaintiff accepted and acted upon Lynch's location of the dividing-line as the proper one for their building

:arrangements the work upon Lynch's house was barely be-
.gun. Lynch was thus encouraged to go on and complete a
·costly structure upon ground which it may be presumed
he would not have thus occupied if the plaintiff had then
.asserted the rights claimed in the present suit. Here are,
*primâ facie*, the elements of an estoppel. The plaintiff, in
accepting the result of the survey made for Lynch, said, in
effect, "I adopt that survey as correct, and as fixing the
dividing-line just where it would be found if a new survey
were made at my expense. I am so well satisfied of its ·cor-
rectness that I will expend my means in building a house
whose walls shall depend wholly on its accuracy to avoid
an encroachment upon my neighbor on the west." Neither
language nor action could have more emphatically notified
Lynch of the plaintiff's intention to abide forever by the
dividing-line thus confirmed by either ·party. There was
no interchange of views between the parties, and no under-
standing or agreement which could be called mutual. But
Lynch was as fully justified in going on with a costly per-
manent improvement, under no fear of future disturbance
from the plaintiff, as if a contract to that effect had been
sealed and delivered. If the plaintiff had merely stood by
in silence and seen Lynch expending his means upon an
honest but mistaken belief that he was operating within his
own premises, there might be more difficulty in bringing
all the facts up to a clear case of estoppel. But the plain-
tiff did more than this. He encouraged that belief in Lynch
by showing that he shared it himself, and was, in full view,
expending his own money upon the strength of it. Lynch's
house was finished and sold to the present defendant, and
about eight years elapsed before the plaintiff thought it
proper to repudiate his former convictions.

Plaintiff insists that there was no estoppel, because he
was himself in ignorance of the true dividing-line, and was,
in fact, misled by Lynch's location of it. But it does not
appear that Lynch ever persuaded the plaintiff to adopt the

line. The plaintiff chose to proceed upon his own convic-
tion that the Cozzens survey was right. For this Lynch
·could be in no manner responsible. As to the plaintiff's
ignorance, it can avail him nothing. There is a distinction
between the class of cases wherein contiguous proprietors
mutually agree upon a dividing-line, and those. wherein the
line is to be established against one party by estoppel *in
pais* arising upon his acts whereby another has been mis-
led. In the former, the parties are supposed to act upon a
full knowledge of their respective rights. If one of them
be ignorant of his rights in the premises, he will not be
held to an agreement which it may be supposed he would
not have entered into had he been fully informed of the
facts. In the latter cases, the ignorance of him who
assumes to know, or who has the means of knowing and
ought to know, is no palliation of the wrong done to one
whom he causes to believe in an untruth and to act upon
it to his own prejudice. Justice to the party who has been
thus misled demands that his informer shall not be after-
wards permitted to deny what he has asserted, upon the
plea that he did not know it to be true. *Hart* v. *Giles*,
(Sup. Ct. Mo.) ;*Storrs* v. *Barker*, 6 Johns. Ch. 166 ; *Sow-
ard* v. *Johnston*, 65 Mo. 102 ; *Turner* v. *Baker*, 64 Mo.
218. The principle applies as well to silent acquiescence,
under certain circumstances, as to open assertion. *Dibble*
v. *Rogers*, 13 Wend. 539 ; *Morgan* v. *Railroad Co.*, 96 U.
S. 716 ; *Thomas* v. *Pullis*, 56 Mo. 211. In *Dolde* v. *Vo-
dicka*, 49 Mo. 98, Bliss, J., said : " No new facts have been
discovered ; the plaintiff could have known every thing he
knows now. He recognized the line to which defendant
occupied as the true one, stood by and saw him erect a
brick building up to it without objection and without mak-
ing any claim to the land covered by the building, and
afterwards built up to the same line himself. Without any
agreement more than is implied by the acts of the parties,
if they trace their line, and, both recognizing it as such, one

shall go forward, with the knowledge and acquiescence of
the other, and make valuable improvements, so valuable as
to work great injury to the party making them if the line
be disturbed, the other is estopped from afterwards alleging
such mistake in the line as shall deprive him of his improve-
ments.    This is especially true where the party seeking to
disturb the line knew at the time the improvements were
made all he has subsequently learned, or had in his hands
the means of knowledge." This language seems pertinent
to all the features of the present case.    When Lynch began
to build on his foundation, the plaintiff had in his hands the
same means of knowledge of the true line that he had at
any time afterwards.    He chose not to use them, but to
adopt the result of the survey made for Lynch, and in the
most notorious way possible proclaimed his absolute confi-
dence in its correctness.

With the concurrence of all the judges, the judgment is
affirmed.