# CHARLESTON.

CAUTLEY *v.* MORGAN.

Submitted January 13, 1902.   Decided March 29, 1902.

1. EJECTMENT—*Injunction—Division Line.*
   C. and M. & H. owned adjoining lots. C., desiring to build a business house on her lot and to make a party wall, an agreement in writing was entered into providing that such wall should be built to extend over on the ground of M. & H. ten inches *only.* C. without invoking the aid of M. & H. to assist in locating the division line or notifying them when she proposed to locate it, fixed the line herself with the aid of the city engineer and built the wall completing it in 1893, and in 1899, when M. & H. desired to use the wall, they discovered it covered six inches more of their ground than was allowed by the contract. *Held:* That equity will not enjoin an action of ejectment by M. & H. against C. to recover possession of the said strip of six inches so built upon.

2. KNOWLEDGE—*Agreement—Acquiescence.*
   There can be no acquiescence without knowledge.   (p. 307).

3. ESTOPPEL—*Silence Not Sufficient.*
   Mere silence or some act done where the means of knowledge are equally open to both parties does not create an estoppel *in pias.*   (p. 307).

4. ESTOPPEL—*Duty to Speak.*
   Silence will not estop, unless there is not only a right but a duty to speak.   (p. 308).

Appeal from Circuit Court, Kanawha County.

Suit by Lucy R. Cautley against Benjamin S. Morgan and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

BENJAMIN S. MORGAN and MOLLOHAN, MCCLINTIC & MATTHEWS, for appellants.

PAYNE & PAYNE, for appellee.

MCWHORTER, JUDGE:

B. S. Morgan and J. H. Huling being the owners of a twenty-two foot lot on Quarrier street in the City of Charleston, and Lucy R. Cautley, wife of R. K. Cautley, owning an adjoining lot, and, said Cautley being desirous of building a party wall between said lots for a business house on her lot, on the 4th day of August, 1892, the parties entered into a written agreement for the building by said Cautley of such party wall of a three story brick building then about to be erected by said Cautley, by which agreement it was provided that said party wall should extend over for the entire length of said wall ten inches upon the ground of Morgan and Huling and as much further as might be necessary for foundation purposes only, but the brick wall should extend over upon the land of Morgan and Huling only ten inches and it was provided that Morgan and Huling, their heirs, vendees and successors in ownership should have the right to build, to use and join on and own one-half of said party wall for any distance they might elect upon the payment to Lucy R. Cautley, her heirs, vendees or successors in ownership of the actual value at the time and to the extent thereof, of so much of said party wall as was built upon the lands of Morgan and Huling, and, in case they should not agree upon the then value of such party wall as should be upon their land and desired to be used by them, that the value should be determined by arbitration in the usual manner. In building said wall Cautley, by mistake, built six inches further on the land of Morgan and Huling than was provided for in the contract. The wall was completed in the year 1893. In the fall of 1899 Morgan and Huling, desiring to use the wall by putting up a temporary building on their lot, discovered the mistake made by Cautley in building too far on their land. They notified Cautley of the fact and some correspondence took place between the parties

with reference to an adjustment of the matter, but no agreement was reached and at the May Rules, 1901, Morgan and Huling brought in the circuit court of Kanawha County their action of ejectment against Cautley to recover their said land.

Lucy R. Cautley filed her bill in the circuit court of Kanawha County praying for an injunction against the prosecution of said action of ejectment and from cutting away any part of said party wall and that Morgan and Huling be decreed to pay plaintiff for the use of said party wall according to the original agreement of August 4, 1892, and the subsequent agreement by correspondence made in the latter part of the year 1899, and to make such decrees and orders that might be necessary to affectuate justice between the parties, and for general relief. An injunction was accordingly granted plaintiff until the further order of the court. Defendants appeared and filed their demurrer and answer. The cause came on to be heard on the 15th of November, 1901, upon the bill, the demurrer and answer and replication thereto, and upon the defendants' motion to dissolve the injunction. The court overruled the demurrer and refused to dissolve the injunction, from which decree the defendants appealed and for assignment say the court erred in overruling the demurrer to the bill and also in refusing to dissolve the injunction upon the defendants' motion. There was no evidence taken in the cause and the same was heard solely on the pleadings, the bill and answer being sworn to.

The title of the defendants to the lot in question is admitted by plaintiff, who disclaims any interest therein except her interest in the wall built thereon. It will be seen by the agreement in writing that the brick wall should extend over upon the land of Morgan and Huling only ten inches. Plaintiff undertook, without any notice to the defendants, to locate said line which is claimed to have been done with the assistance of the City Engineer, and built the wall on such location, and it is claimed and seems to be tacitly admitted that the wall is built sixteen inches on the land of the defendants instead of ten inches as provided in the contract, and defendants claim that the wall is only sixteen inches wide instead of twenty inches as it was to have been as they claim under the contract. The bill does not allege that defendants had any actual knowledge of plaintiff's encroachment upon their lot prior to the time that they claim to have discovered it, in the fall of 1899 when they

desired to use the wall in the construction of a temporary building. The bill does allege that the defendants acquiesced in the location, but not that they knew of such improper location. It appears from the bill that plaintiff undertook alone, and without invoking the assistance of the defendants, to make the location, and says she used every effort to get the location right. And defendants aver in their answer that they had no knowledge of the improper location until they undertook to use the wall in November, 1899. It is not claimed by plaintiff in her bill that defendants were called upon to take any part in the location of the line nor given notice of her action in making her measurements with the assistance of the engineer. The bill alleges an agreement between the parties that the defendants were to pay a sum of money for the use of the wall while using it temporarily, which she prays may be paid to her by the defendants, but this agreement is denied by the answer of defendants, and the exhibits filed with the bill and answer relating to such compensation do not show an agreement to pay any particular sum. The written agreement of August 4th does not specify in terms how thick the wall should be, but it would seem to be understood that it was to be twenty inches, the same providing that it should be ten inches from the line on the land of defendants the fair presumption is that the meaning and understanding was that it should be ten inches on the side of the plaintiff also from the line. If it was so built and it has been, by mistake as alleged, placed six inches too far on defendants' land then four inches of the wall stands upon the land of the defendants. If the encroachment is as claimed and the wall is only sixteen inches thick, then the wall stands wholly on the land of the defendants. In *Blodgett* v. *Perry*, 97 Mo. 263, 10 Am. St. Rep. 307, it is held to constitute an estoppel *in pais* "there must be a false representation or concealment of known material facts, made to a party ignorant of their truth or falsity, and made with intent that the latter party would act upon them, and he must have so acted upon them." And it is there further held: "Mere silence or some act done where the means of knowledge are equally open to both parties does not create an estoppel *in pais*." And in *Estis* v. *Jackson*, 111 N. C. 145, 32 Am. St. Rep. 784, it is held: "To create an estoppel *in pais* there must be some conduct of the party, against whom the estoppel is alleged, amounting to a representation or conceal-

ment of material facts, and when everything is equally known
to both parties, although they are mistaken as to their legal
rights, no estoppel arises." *Brant* v. *Coal & Iron Co.,* 93 U. S.
326; *Liverpool Wharf* v. *Prescott,* 7 Allen (Mass.) 494; 2 Her.
on Estop., s. 1062; 2 Pom. Eq. Jur., s. 809; 11 A. E. E. L.
421-432; *Brewer* v. *Railroad Co.,* 5 Metc. 478. In which last
case A. and B. had a parol agreement on a line between them,
which did not agree with the true line but they afterwards held
possession by the agreed line. B. sold his land to C. Before
the sale A. stated to C. that he (A.) claimed by the agreed line
between him and B. and did not claim beyond that line. C.
purchased and made improvements on the land next to the
agreed line with the knowledge of A., who was often present
and pointed out said line expressing no dissent to C. proceeding
or giving notice that he had any claim to said land. A. after-
wards discovered that the agreed line was not the true line and
that C. was in possession, as B. had been, of land which accord-
ing to the true line belonged to A. He brought his action
against C. to recover the land between the true line and the
agreed line. It was *Held:* "That A. was not estopped to
claim this land of C., as he had acted under a mere mistake
without fraud or gross negligence." In that case A took an
active part in fixing the line where it should not have been lo-
cated. The case of *Liverpool* v. *Prescott,* above cited, is very
similar. These cases are both cited as leading cases in Bigelow
on Estop. pages 618-19. At section 960, 2 Herman on Estop.
it is said: "The principles which estop a man from claiming
what is conceded to be his own property are highly penal in
their character and should not be enforced unless there is a
concurrence of circumstances, such as are necessary to the cre-
ation of equitable estoppel. Nor does it apply to one who has
no knowledge of his rights." In case at bar it is not pretended
that defendants ever did any act, or made any admissions that
were misleading, or upon which plaintiff could claim to rely,
or that they knew of the encroachment except that they lived in
the neighborhood of the property. *Bartlett* v. *Kauder,* 97 Mo.
356-361. And in *Rubber Co.* v. *Rothery,* 107 N. Y. 310, it is
held: "Silence will not estop, unless there is not only a right
but a duty to speak." In *Kirchner* v. *Miller,* 39 N. J. Eq. 355,
a case almost on all fours with case at bar, where plaintiff and
defendant were owners of adjoining lots, plaintiff employed a

surveyor to fix the dividing line which he mislocated, and plaintiff, supposing that he was building on his own land, inadvertantly placed his house a few inches over on defendant's lot, defendant also being then unaware of the encroachment.   It was *Held:* "That equity would not enjoin an action of ejectment by defendant against complainant to recover possession of the strip so built upon."   It is true there is a contract in case at bar between the parties for a party wall, but there was a strict provision in the contract that plaintiff should not build more than ten inches on defendants' property, and going beyond that ten inch line was in fact as much a trespass as in the *Kirchner-Miller Case* in going over the true line.   It is claimed by appellee that said case is not applicable here, that in that case a cheap building was put upon the ground and could be removed at a small cost, and cites *McKelway* v. *Armour,* 2 Stock. (N. J. Eq.) 115, decided in 1854, in support of their contention.   The position taken by the court in the *McKelway Case* is criticized very severely in the case of *Kirchner* v. *Miller,* cited, decided thirty years later.   In the opinion in the last mentioned case beginning at page 358, the court says: "Although in that case Armour saw McKelway building on his land, he did not know or suspect that the building was being erected on his land, but supposed it was being built on McKelway's land.   The decision seems to have been based on the ground of mutual mistake.   The court, in fact, compelled Armour, who was in nowise in the wrong, to sell his property to McKelway at a price to be fixed by the court, or to exchange properties with McKelway, or to pay for the improvements which McKelway had put on his, Armour's lot, although they had been so put on that lot, not only without Armour's knowledge, but without any suspicion on his part that McKelway was putting them on his, Armour's property.   The principle of the case is that where one by mistake puts improvements on another's land, mistaking it for his own, equity will, in a proper case, compel the latter to sell and convey the land to the former, at a price to be fixed by the court, unless he will consent to pay for the improvements.   The exercise of such a judicial power, unless based upon some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional right.   No tribunal has the power to take private property for private use.   The legislature itself cannot do it.   In *McKelway* v. *Armour,* the defendant

was, by judicial compulsion, forced to sell his land to the complainant merely because the latter had, by his own mistake, put valuable improvements upon it, supposing it to be his own. The alternative given to the defendant—the terms on which alone he was allowed to hold his own property—was to pay for those improvements." And in the same opinion in discussing the case then at bar it is said at page 360: "The complainant's claim is that inasmuch as he, misled by the mistake of the surveyor, honestly but mistakenly assumed that he was the owner of a strip of land which in fact belonged to the defendant, and consequently built a part of his house on it, he is, on that state of facts alone, although the defendant neither did nor said anything to confirm him in his mistake, and in fact did not know that there was a mistake, entitled in equity to a decree that the defendant convey the land to him at a price to be fixed by the court, or accept land on the other side of his lot in exchange for it. To state the claim is to demonstrate its untenable character." It will be seen that the rulings in the case of *McKelway* v. *Armour* were by no means approved. Appellee also cites *Acton* v. *Dooley*, 6 Mo. App. 323, where the opposite doctrine is held from that in *Kirchner* v. *Miller*, and other cases cited, but it appears from the same case reported in 74 Mo. 63, that an appeal was taken from said decision and the decree reversed. In the opinion of the court last mentioned in 74 Mo., reversing the St. Louis Court of Appeals in *Acton* v. *Dooley*, it is there said: "Silence in some cases will estop a party, but silence without knowledge works no estoppel." And in *Frazee* v. *Frazee*, 79 Md. 27, it is held: "Where a party's rights in property sufficiently appear of record, mere silence on his part is no violation of duty and he is not estopped to assert his rights against persons dealing with his property as another's." 11 A. E. E. L. 435, and authorities there cited.

Counsel for appellee charge defendants with the grossest negligence in not measuring off the width of their lot to ascertain the encroachment, that they saw the building going up where it was and remained silent and by their silence acquiesced in the location, when "they could have prevented the mistake by giving the matter ten minutes attention at the proper time." The defendants were not building the party wall, the proposition came from the other side, they entered into the contract permitting it to be built on the terms set out in the contract.

The plaintiff took it upon herself to fix the location and she had precisely the same knowledge of the true line as the defendant. She proceeded to locate the line on her own responsibility giving the defendants no notice as to when and how she would ascertain the location, but fixed it herself and began and completed her building and now asks to have a court of equity relieve her from the results of a mistake purely and wholly her own. If the fact of a mistake could have been discovered by giving the matter ten minutes attention at the proper time, it would seem that it was her duty to have given this attention; while there was no duty resting upon defendants in that behalf. Counsel for appellee attempts to distinguish this case from *Hodgkins* v. *Farrington,* 150 Mass. 19, and other cases cited by the defendants, because there was a contract for the erection of a party wall, but that contract itself fixes the line, beyond which she may not go on the defendant's property, at ten inches from the partition line and she is no more authorized to cross that line than she would be if building a wall on her own account, on her own land in crossing the true division line. Counsel for appellee contend that this is a case *de minimus non curat lex.* The defendants have a narrow lot sufficient only for one business room and need every inch of their ground, and the mere value of the land per foot in that locality cannot be taken as a reasonable compensation for the damage done in taking the land. Every inch taken off of defendants' land reduces its value for practical purposes far beyond the mere valuation of the land, and, being so located that they cannot supply the room by the purchase of other lands, to the extent of the inconvenience and reduction in the necessary size of the room and front entrance to the upper stories, the damages are irreparable; and the benefits accruing to the other party in the enlargement of his room by changing the partition line are correspondingly great. This is a hard case but it has been well said that "hard cases make bad law." This was well demonstrated in the case of *McKelway* v. *Armour,* before cited, where a valuable dwelling house was, by mistake, built on the lot of another and the court undertook to relieve the party, who made the mistake by "putting the defendant to as little inconvenience as possible," by transferring other property to him in the place of that taken, thus, virtually making a new contract of sale and purchase for him; which case was afterwards, by the case of *Kirchner* v. *Miller,*

also cited, substantially overruled. The court in its opinion, criticising the decision in the *McKelway Case,* says: "The exercise of such a judicial power, unless based upon some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional right. No tribunal has the power to take private property for private use. The legislature itself cannot do it." In *Pile* v. *Pedrick,* 167 Pa. St. 296, a case where one party undertook to build a wall entirely upon his own land was given by the city surveyor inaccurate lines, and in constructing the wall encroached with his foundation stones one and three-eighth inches on his neighbor's land, without any encroachment by the wall above the surface, and the neighbor refusing to permit the defendant to enter upon his land so as to cut off the projecting ends of the stones, the court held that in equity it was "compelled to enter a decree requiring the defendant to take down and rebuild the entire wall from his own side." This was certainly a hard case, but the court felt itself bound to maintain the constitutional rights of the individual in the enjoyment and possession of his property. To have held otherwise would have seemed right in that particular case as the defendant could not have been damaged in any regard, but it would have established a wrong principle, therefore, the court felt bound to give the "pound of flesh" where it was demanded. It is not charged that either party has been guilty of fraud or intentional wrong. Under the circumstances of the case the defendants had no duty in the matter, unless they had knowledge that the wall was being constructed on an improper location, and it is not alleged that they had such knowledge, and they aver that they never discovered it until they came to use the wall in the fall of 1899. While it was plainly the duty of the plaintiff, having undertaken to build the wall and assuming the responsibility of fixing the location herself with the assistance of the city engineer, it was manifestly her duty to see that it was properly located. She had the data at hand, by a careful use of the same, to have made no mistake and with the facts before her and in her possession, or of record, the presumption was, and the defendants had a right to believe, that plaintiff had located the line at the proper place, and the defendants were not called upon to make the investigation in order to save plaintiff from the mistake that proper care and watchfulness on her part would have prevented. It seems to be one of those cases where there

was no intentional fault on the part of either, but by the improper action, though unintentional, of one of the parties a mistake was made, whereby one party or the other must suffer a hardship. This being the case, it is held: That that party, upon whom a duty devolves and by whom the mistake was made, should suffer the hardship rather than he who had no duty to perform and was no party to the mistake. For the reasons here given the decree of the circuit court, in refusing to dissolve the injunction, is reversed and this Court, proceeding to render such decree as the circuit court should have rendered, dissolves the injunction and dismisses the bill with costs.

*Reversed.*