# CHARLESTON.

WATER COMPANY *v.* BROWNING.

Submitted February 2, 1903.     Decided April 28, 1903.

1. PIPELINES—*Estoppel.*

A party lays a pipe line for conveyance of water by mistake partly in land of another without right of way, and seeks to maintain the easement on the theroy of estoppel based on conduct of the land owner. He cannot assert such estoppel, first because the land owner's silence in omittting to tell the other party of his right is not an estoppel *in pias;* and also because he did not know, that the line would pass or was laid, through his land until after its completion; also because what the land owner is shown to have said without intent to mislead the other party, or with reasonable expectation that it would be acted on; also because the other party was not induced or misled thereby to lay the pipe line. (p. 439).

Appeal from Circuit Court, Mercer County.

Bill by the Pocahontas Light & Water Company against J. L. Browning. Decree for defendant, and plaintiff appeals.

*Affirmed.*

A. W. REYNOLDS and DOUGLAS H. SMITH, for appellant.

C. W. SMITH, HENRY & GRAHAM, CHAPMAN & GILLESPIE, and BROWN, JACKSON & KNIGHT, for appellee.

BRANNON, JUDGE:

W. H. H. Witten conveyed to the Southwest Virginia Improvement Company a right of way for a pipe line for the conveyance of water, and the company laid the pipe line, and later sold the water plant and right of way to the Pocahontas Light and Water Company. The right of way as conveyed by Witten passed for some 874 feet through land not owned by him, but owned by A. St. Clair. St. Clair conveyed his tract of land to J. L. Browning. After the water pipe line had been down and operating some seven years, Browning began to remove that part of it upon his land, and then the water company brought a chancery suit in the circuit court of Mercer County to enjoin Browning from removing the pipes, to declare an estoppel against the claim of Browning to remove the pipes, and to quiet the possession of the water company and its use of said pipe line through Browning's land, and to declare that it had good right to the easement of its pipe line and right of way through Browning's land. The result was the dismissal of the bill and an appeal by the water company.

It is not questioned that the pipe line is in part on land of Browning; nor is it claimed that St. Clair ever gave right of way through his land. The whole claim of the water company is that it has title by estoppel *in pais* from conduct of St. Clair. It is not claimed that he ever expressly gave right of way or his consent to the construction of the pipe line. The whole claim is that he knew of the laying of the pipe line and made no objection; in short, he was silent. The utmost that can be said to support this contention is that St. Clair passed along by where the ditch for the pipe line was made, and while it was open, and saw some of the iron pipes lying on his land, and thus

knew of the construction of the work, and made no protest. And that in the town of Pocahontas while the work was going on in the country, he talked with the superintendent, asking him when the work would be completed so as to be used in the town, and expressed interest in its completion, and said he had suffered loss as a property owner in the town from fire and that the water works would be a great benefit to the town.

Whilst I do not think that even if this is true, it would devest St. Clair of his land, it is a very important element, for the company to sustain its position of estoppel against St. Clair, that he should have known, before the pipe line was laid, that it was to be laid through his land; for then it might be said that he allowed the company to expend money without objection. "A representation, admission or act after the party's position has been changed will not avail as grounds for estoppel, because it cannot have been acted on." 4 Am. & Eng. Dec. in Eq. 286, citing *McCall* v. *Powell,* 64 Ala 254, and many other cases. But he says he did not know that the line passed through his land until after it had been laid. It is not proven that he did know until later. The witness who says he passed by where the ditch was and the pipes were being unloaded, leaves us to think that St. Clair was engrossed with business thought and did not observe; he says he paid no attention to the ditch, but passed on to Pocahontas. He says the line passed through a rocky wooded corner of St. Clair's land. St. Clair lived ten miles away from the line. St. Clair says the only work he ever saw in cutting the ditch was at a different point on the line. St. Clair seems to be fair, certainly not partial to Browning in his evidence— rather otherwise. As to expression of satisfaction with the coming improvement, that was in casual conversation, just what any one would say, and is utterly frail and incompetent for the basis of estoppel. Did he make the remarks with intent to bind himself? There is no evidence at all that the company constructing the water line was in the least influenced by his remarks or silence, because it did not then have the faintest idea that any of the right of way passed through his land. How can the company say it was misled by what he said, or did not say, when no one thought of the line running on land of St. Clair? To make it an estoppel the company must be able to say that it was led thereby to make outlay of money. *Adkinson* v. *Plum,*

50 W. Va. 104. I repeat language cited to the same effect in *Williamson* v. *Jónes,* 43 W. Va. 563, that "to create a duty to speak it must be known by the one keeping silence that some one is relying on that silence, and is acting or about to act as he would not had the truth been told." *Viele* v. *Judson,* 40 N. Y. 40. The old case of *Stuart* v. *Ludington,* 1 Rand. 403, so holds. So does *Hall* v. *Hall,* 30 W. Va. 780. I repeat, the company did not act on either St. Clair's words or silence, because the company did not know that it was on his land. We must say it was misled to its injury to set up an estoppel. 4 Am. & Eng. Decisions in Eq. 281, 287, where will be found, in a note to *Williamson* v. *Jones,* a most elaborate and valuable discussion of estoppel and collection of authorities. See 2 Pomeroy, Eq. sec. 805. But suppose the company did act on St. Clair's silence or talk. It will not create an estoppel, because one must not thus act recklessly, must use some care and diligence himself. There were the deeds on record. There was the line fence crossed by the pipe line dividing the Witten land from St. Clair's. It is not necessary to prove that one claiming estoppel had actual knowledge of the truth in order to defeat him; it is enough if he was bound to knw the facts, or his means of knowledge were equal to those of the other party; for a failure to protect himself by using means of knowledge was negligence and disentitles him to equitable relief. 4 Am. & Eng. Dec. in Eq. 274. He must not know, or must be without means of knowing the facts. *Atkinson* v. *Plum,* 50 W. Va. 104.

The doctrine "that where one stands by and sees another laying out money on property to which he has claim, and does not give notice of it, cannot afterwards, in equity and good conscience, set up such claim, does not apply to an act of encroachment on lands the title to which is equally well known or equally open to the notice of both parties." *Gray* v. *Bartlett,* 20 Pick. 186; *Casey* v. *Inloe,* 39 Am. D. 677. Was it not clear negligence in the company to lay its line on another's land when it could so readily have learned? If you build on my land, and I do not warn you, you get good title to my land. You cannot do so, even if I see you building. You should have inquired. "If a stranger enter upon the land of another and make improvements by erecting buildings, they become the property of the owner of the land. Were it not so, a person

might gain a title by commission of trespass, and strip his neighbor of his estate or subject him to compulsory expense, under the pretext of improving his property. The foundation of property consists in its being an exclusive right; other persons cannot impair its enjoyment, or impose burdens on it by inter-meddling with it without the owner's leave or color of legal authority. * * * I know of no case where equity has on the mere ground of silence, relieved one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertake to proceed in expending money on the land of another, without obtaining or asking his consent. His ignorance, if it exists, is wilfull, and he acts at his peril." *Crest* v. *Jack,* 27 Am. Dec. 354 (Penna). Note to same cause.

"That equity will not on mere ground of silence of the owner, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertakes to proceed in expending money on the land of such owner, without obtaining or asking his consent. *Marsh* v. *Weekerly,* 13 Pa. 252; *Knouff* v. *Thompson,* 16 *Id.* 364; *Hill* v. *Epley,* 31 *Id.;* *Rogers* v. *Walker,* 6 *Id.* 374..

"It is difficult to imagine how the concealment of a fact, which an individual of common prudence and sagacity would discover, can constitute a fraud. It is a clear elementary principle; that the law imputes to the purchaser a knowledge of every fact of which the exercise of ordinary diligence would have put him in possession. And such an imputation of knowledge is sufficient to rebut the inference of a merely constructive fraud, which might otherwise be implied from the silence of the party." *Alexander* v. *Kerr,* 19 Am. D. 616. *Clark* v. *Parsons,* 76 Am. St. R. 159 is in point here. The idea that one man can get title to another man's land, or title to an easement upon it, by improvement upon it, or making a road upon it, or a sewer, because he is silent, just as if he had given a grant, is absurd. No estoppel to work that grave result can exist except in the clearest case. The statute of frauds says it takes a deed to do this; but here it is sought to pass an easement in fee not even by word of mouth, but by mere silence. If this proposition prevails, what tenure has a man of his lands?

Another vital requisite of estoppel is that the person to be

bound by it must know that his own right in the matter is being prejudiced by the act of another. Since fraud is the gist of estoppel, unless the person is fully acquainted with the true state of affairs, and with his rights in the matter, he will not be estopped, and therefore one who makes statements or does acts in *bona fide* ignorance of the facts and his rights will not be estopped, unless his ignorance was the result of gross negligence. 4 Am. & Eng. Dec. in Eq. 269; Bigelow, Esto. p. 519; *Bower* v. *McCormick*, 23 Grat. 321. St. Clair did not know that the pipe line would be on his land, or that it was, until after it had been laid. Was he bound to look to see that it would not be put on his land? That is virtually the proposition. Was it not more the duty of the company to look at the deed and the line fence, and survey, if necessary, rather than the duty of St. Clair to guess the company might use his land and see to it that it did not? "In order to establish an estoppel it is necessary that the representation or conduct relied upon should have been intended to influence the other party to act; and if there was no such intent, the estoppel is not made out." "If the person who makes the representations does not know, and has no reasons to believe, that the other will act upon them, he will not be estopped." 4 Am. & Eng. Dec. in Eq. 276; Pom. Eq. section 806. The truth is St. Clair neither did nor said anything to mislead, or that did mislead; but he was simply silent when he did not even know his rights were being invaded. Of course, this excludes all elements of estoppel. The company simply made a mistake in using St. Clair's land and now wish to make their own mistake St. Clair's mistake, and charge it to the burden of his alienee. It practically says or shows nothing but that it *believed* that its title was good. Therein, it shut its eyes to deeds, line fence, and open means of knowledge. Mrs. Cautley innocently built the wall of her house six inches over the proper line; but her mistake gave no right to another's land. *Cautley* v. *Morgan*, 51 W. Va. 304. In the case are points fitted to this case. "There can be no acquiescence (of St. Clair) without knowledge." "Mere silence, or some act done where the means of knowledge are equally open to both parties, does not create an estoppel in *pais*." "Silence will not estop, unless there is not only right, but duty to speak." Suppose St. Clair had even consented by express words.

It would defeat the law requiring deeds thus to vest an easement such as this in land. A sewer easement can not be made without a deed. *Pifer* v. *Brown,* 43 W. Va. 412. The proposition of the appellant is simply that one can go upon another's land without his consent, without his knowledge, make a pipe line on the land and get perfect title to the easement. Nothing but the statute of limitations will make such a trespass confer title. It is hardly necessary to add another cardinal rule as to estoppel *in pais.* "The estoppel must be certain; and by this is meant, not only that the facts upon which it is based should be clearly proven, but they should not be capable of bearing any other construction than that put upon them. If susceptible of an interpretation which will not imply an estoppel, the latter effect will not be given them. In other words, the representation or act relied upon, and its effect, must be plain and definite, not ambiguous or equivocable." 4 Am. & Eng. Dec. in Eq. 263. "What is the reason of this rule? It is accurately expounded in the same decision, (Foot Note, referring to *Steirs* v. *Barker,* 6 John's 344). While the owner of the land may by his acts *in pais* preclude himself from asserting his legal title, it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be effected by parol evidence of a doubtful character."

"The doctrine of estoppel is never applied, in any of its branches, upon an uncertain and speculative state of facts." *Bargamin* v. *Clarke,* 20 Grat. 544. It is useless to discuss the case of *Stone* v. *Tyree,* 30 W. Va. 687, and *N. & W. R. R. Co. v. Purdue,* 40 *Id.* 442, and like cases, because they are not analogous case, since the evidence is too weak to parallel this case with them. The evidence does not lift this case to their standard.

The facts and law plainly call for affirmance of the decree of the circuit court, and such will be the decree.

*Affirmed.*