# CHARLESTON.

### BARNES v. COLE.

### Submitted February 22, 1916.    Decided March 7, 1916.

1.   SPECIFIC PERFORMANCE—*Contract to Convey Realty—Enforcement in Equity—Pleading and Proof.*

  To be specifically enforceable in equity, a contract for the conveyance of real estate must be averred and proved with reasonable certainty. Where the bill and proof fail clearly to show the terms

and amount of a consideration agreed upon, the contract is incomplete and unenforceable.   (p. 706).

2.  ESTOPPEL—*Estoppel by Conduct—Land Sale Contract—Pleading and Proof.*

Conduct predicated solely upon a .contract for the sale of real estate will not constitute an estoppel enforceable by injunctive process, unless the *factum* and validity of the agreement be substantially alleged and proved by the party relying on the estoppel. (p. 7.07).

3.  SAME—*Possessory Action—Silence of Owner.*

When the defendant in a possessory action knows, or has equal means of knowing, the true status of the legal title, the mere silence of the owner will not in equity estop him from prosecuting such ation.   (p. 709).

Appeal from Circuit Court, Lewis County.

Injunction by Thomas N. Barnes against James P. Cole. From decree for plaintiff, defendant appeals.

*Reversed, injunction dissolved, and bill dismissed.*

*W. J. Smith,* for appellant.

*J. M. Foster,* for appellee.

LYNCH, JUDGE:

To restrain the prosecution of an action of unlawful entry and detainer brought by J. P. Cole against him before a justice and now pending in the circuit court on appeal, and to require specific performance by Cole of a·contract of sale for the real estate involved in the law action, T. N. Barnes brought this suit.   The decree appealed from, although virtually but not in terms expressly denying right to an enforcement of the contract, did grant the injunctive relief prayed, on the theory of an estoppel by conduct.

The lot in controversy in each proceeding is a strip of ground 30 by 72 feet, situate in the city of Weston, being part of the right bank of the West Fork river, title to which is adversely claimed by each of the parties to this litigation. Barnes acquired title, according to his contention, through his mother, who it is alleged took possession of the disputed. strip in 1878 and thereafter occupied it as part of lot number 17, conveyed to her in that year, though apparently the parcel

is not embraced by the exterior boundaries of that lot. That possession and occupancy Barnes has continued without interruption, and still continues, as successor to the title of his mother, they having paid the taxes assessed against lot 17 since the date of the grant to her. Cole relies on a deed by M. S. Holt dated April 10, 1889, conveying to him six acres, including both banks and the bed of the river and concededly the parcel in dispute. He has since paid all the taxes charged against that acreage. The right to the title so acquired by Cole, Barnes claims by virtue of an alleged oral contract made in 1891, and in this proceeding sought to be enforced, whereby he alleges Cole agreed to convey to him the parcel now involved, Barnes however, did not thereby concede the superiority of the Cole title, but in order, he says, to obviate by compromise any litigation as to the adverse claims to the ownership of such parcel. Though Barnes in his bill alleged, and by his testimony sought to prove, and if uncontradicted, it may be said, he did affirmatively show, the agreement relied on, Cole expressly and positively denied he entered into any contract to sell to Barnes or into any negotiation having that purpose in view, and contends that Barnes' continued possession was merely permissive and without compensation, with the assent of both, and subject to the right of Cole to terminate it whenever he desired to devote the property to his immediate personal use.

Whatever may have been the negotiations, if any, between the parties, it is clear that at no time did they discuss or agree on the consideration for the transfer of title. None is alleged in the bill, none is proved. The nearest approach to a discussion of the terms and amount of payment was on one occasion a suggestion by Barnes, in the nature of an offer, that $25 or $30 would be a reasonable compensation for the parcel of land, and on another occasion many years thereafter a like suggestion of $50, but as to which Barnes stated only that Cole "offered no objection" to the sufficiency of the proposal. But manifestly a failure to object, when no duty required Cole to speak, can not be deemed the equivalent of an acceptance of a price proposed for the conveyance of real estate. For to effect a valid contract of sale the minds of the contracting parties must meet on every element deemed

essential to its validity and enforceability, one of such essentials being the consideration to be paid for the subject matter thereof. Without such consensus, or some definite provision for ascertaining with certainty the value of the thing sold, the contract plainly is incomplete and unenforceable at the suit of either party to the agreement. Pom. Spec. Perf. §148; *Weaver* v. *Burr*, 31 W. Va. 736; *Lowry* v *Buffington*, 6 W. Va. 249. Nor, as held in *Berry* v. *Wortham*, 96 Va. 89, will equity enforce specifically a contract when the time and terms of an agreed consideration therefor are subject to future negotiation and adjustment, and no such adjustment has been effected; or, as held in *Graham* v. *Call*, 5 Munf. 396, where the sale was made upon a consideration subsequently to be determined by the parties and one of them died before the price was fixed.

The most potent reason for declining to require Cole to perform the contract was the failure to aver and prove its execution and validity. Barnes assumed the burden of showing a positive and definite agreement. He and Cole alone testify as to the agreement relied on. But no testimony reasonably could be more adverse or inconclusive. Barnes affirms and Cole denies, each of them being equally positive; and, as we must assume, they are entitled also to the same degree of credibility. Hence, the conclusion seems unavoidable that, by reason of the indefiniteness as to the *factum* of the agreement, the uncertainty of its terms, and invalidity for want of the essential element as to price, the contract, if made, has become wholly unenforceable.

Was the injunctive relief granted based properly upon the doctrine of estoppel, or upon any other valid ground warranting relief by that process? Apparently, every averment of the bill made with any degree of perspicuity or definiteness to show or tending to show a purpose or intent by Cole to mislead or deceive, or that virtually or effectively he did mislead and deceive, Barnes to his prejudice and injury, directly relate to and were predicated upon the alleged contract of sale. That agreement and Cole's conduct respecting it the bill made the sole foundation for the equitable estoppel relied on by plaintiff, and the basis for relief by the award of the injunctive process. It was founded, and finds support,

in no other fact or circumstance alleged by plaintiff, as we construe his pleadings. Except as to the character and continuity of his possession and the publicity of his dealings with the property, he directed his proof to that contract and the consequences of Cole's lack of good faith towards him in respect to it. By his bill and testimony, he said that, "relying on the aforesaid agreement, the plaintiff erected a store house on the front part of his lot (number 17) at great cost"; that he is doing a large retail business from the said store; that if he was to lose the said lot where he has his warehouse, on the disputed parcel, it would practically destroy his business place, as he would have no place in which to store his goods and wares, and work irreparable injury and damage to him; that "claiming the property and relying on defendant to make the deed as hereinbefore set out", he "filled in the aforesaid lot with earth   *   *   * and erected buildings thereon at great cost", and rebuilt the same after their destruction by fire, the work having been performed and the expense therefor incurred in full view and with the knowledge and near the residence and usual place of business of the defendant. Thus Barnes manifestly placed exclusive reliance for relief upon the assumed existence of a binding oral agreement, and the infidelity of Cole towards his contractual engagements, as the former seems to have understood them.

An equitable estoppel can not be predicated upon any conduct of Cole in respect to a non-existent agreement, to which were directed the pleadings and proof. But, as Barnes did aver and prove long continued possession and improvement of the river bank, and payment of taxes on lot 17 under a misapprehension that the bank was a part of that lot, we may properly inquire whether Cole did or said or refrained from doing or saying anything that might furnish a basis of an equitable estoppel foreclosing his right to prosecute the action at law enjoined by the decree. A percursory review of the case may seem to warrant the conclusion that the facts proved were sufficient to give rise to such an estoppel. But, granting all that Barnes claims apart from the alleged agreement, by what conduct has Cole estopped himself from asserting title to the property in question? The constituent elements of an operative estoppel, as defined by *Railway Co.* v. *Walker,*

100 Va. 69, *Mason* v. *Bridge Co.*, 28 W. Va. 639, *Morgan* v. *Cautley*, 51 W. Va. 304, *Railroad Co.* v. *Perdue*, 40 W. Va. 442, and 2 Pom. Eq. Jur. §805. succinctly stated, are an intentional misrepresentation or concealment of some material fact for the deliberate purpose of deception by the party charged; his knowledge of the true state of the facts, unless he ought to have known they were untrue or his lack of knowledge was due to his negligence; and ignorance of the truth thereof by the party hurt, who in relying thereon was misled and deceived. To deprive an owner of the legal title to real estate by the application of that drastic doctrine, the basis therefor ought to be established by clear and convincing proof; and if that element of certainty is wanting there can not be an estoppel. *Delaplaine* v. *Grubb*, 44 W. Va. 612; *Williamson* v. *Jones*, 43 W. Va. 562; *McNeely* v. *Oil Co.*, 52 W. Va. 616; *Water Co.* v. *Browning*, 53 W. Va. 436; Bigelow on Estoppel 578.

No misrepresentation or concealment was traced to Cole. Apart from the alleged contract of sale, he did not say anything that could mislead or deceive. Nor is it at all clear in what respect his silence reasonably may have that effect. Every fact regarding the status of the Cole title was equally well known to Barnes and Cole. Of that status neither of them possessed any information unknown by the other. If Barnes continued to occupy and improve the property, with knowledge of the outstanding adverse title, which, though at first it may have been fictitious or spurious, he knew would, by operation of the staute and payment of taxes, in time become consummate and absolute, and especially if such possession was merely permissive, as Cole contends, upon what reason or authority in such circumstances can it be said the latter is estopped in equity to claim the benefit of his title? No valid reason seems obvious or apparent, and the authorities deny that effect when based on mere silence unless some imperative duty required the owner to speak. Silence does not estop where the means of knowledge are equally available to both parties and both knew, or the party claiming the benefit of the estoppel knew, the actual status of the title. *Williamson* v. *Jones*, 43 W. Va. 562; 10 R. C. L. 781, 783; *Crest* v. *Jack*, 3 Watts 238, 27 Am. Dec. 353; *Goodson* v.

*Beacham,* 24 Ga. 150; *Casey v. Inloes,* 1 Gill 430, 39 Am. Dec. 658. There can be no question of the equality and actuality of the clear and complete understanding of the true situation and condition of the claim by Cole under the Holt deed; and, so far as we can discover, he has not said or done or refrained from saying or doing anything that would estop him from prosecuting the law action. Of the rights of the parties in that action we express no opinion; but, from what has been said, it is apparent that our order will dissolve the injunction, reverse the decree, and dismiss the bill.

*Reversed, injunction dissolved, and bill dismissed.*