Morris E. Spector, J.
This is another of the internecine legal battles that have been going on between the directors of these corporations in the courts since 1954. This is a director’s derivative action brought against two corporations, and the other directors of said corporations, seeking to establish that the fees paid by the corporations to attorneys who acted in behalf of said corporations and their directors in previous lawsuits were ultra vires and/or excessive, and, further, that the corporations sold certain units of stock in said corporations for a sum below the fair value of such stock. The prayers for relief demand of the individual defendants (directors) an accounting to the corporations for loss and damage sustained because of the payment of said fees and for the aforesaid sale of stock.
There previously had been brought a mandamus proceeding by this very plaintiff in this action and others to compel the boards of directors of said corporations to call a special meeting of the stockholders for the purpose of restoring to the status of authorized but unissued shares 237 units of the capital stock of said corporations, which had theretofore been reacquired by said corporations.
Shortly thereafter, one Dr. Angelo Procario brought a derivative action, individually and as a director of said corporations, against said corporations and various directors thereof for fraudulently acquiring stock from a retiring stockholder without first offering same to the said corporations, upon the same terms and conditions upon which these directors acquired same, as provided in the provisions of the stock certificates and by-laws.
Both actions were tried jointly.
The firm of Miller & Miller, Esqs., represented the corporations and directors in the defense of the mandamus proceedings and represented Dr. Procario in the specific performance action.
The mandamus proceeding was dismissed upon the merits and Dr. Procario prevailed in the specific performance action and the respective defendants in said action were required to turn over the stock units in question to the corporation at the price of $90 per unit.
*372 The judgments were appealed to the Appellate Division. The judgment in the mandamus proceeding was affirmed and the judgment in the specific performance action was modified, in that the price of $90 per unit was reduced to $66.67 per unit, which was the price that these directors had paid. The judgment was otherwise affirmed.
The firm of Miller & Miller, Esqs., received a fee of $3,500 from Dr. Procario plus disbursements for the prosecution of his action, which sum was reimbursed to Dr. Procario by the corporations. Said firm of attorneys received $14,000 from the corporations for their services to the corporations and directors in both actions. These fees were duly voted by resolutions of the boards of directors and duly approved at a subsequent stockholders meeting. The vote in each instance was by a majority (but not a unanimous) vote.
The plaintiff contends that the payment of a fee by the corporations to these attorneys for services in the actions was ultra vires and relies upon the recent case of Garlen v. Green Mansions (9 A D 2d 760), wherein the Appellate Division, First Department, stated 11 While a corporation is usually a passive litigant in a stockholder’s derivative action, it may well be that the equitable relief sought in the complaint requires an appearance and answer by the corporate defendant. However, such appearance must be by independent counsel whose interests will not conflict with those of the individual defendant. ’ ’
In the specific performance action, it must be noted that the corporations, when informed of the action, passed a resolution that the action “ is justifiably brought and that this corporation does hereby consent that an order to that effect may be entered ”; also that many of the directors who had acquired these stock units with “taint of fraud”, defaulted in the proceedings and came forward and testified on behalf of the petitioner and offered to turn the stock units over to the corporations. It was because of the refusal of the other directors to turn their stock units so acquired back to the corporations that necessitated the prosecution of said suit.
In the mandamus proceedings the attorneys for the corporations and the defendant directors were the same. The issue in that case was whether the petitioners were entitled to an order directing the call of a special meeting of stockholders for the purpose of restoring 237 imits of treasury stock of said corporation to the status of authorized but unissued shares. Pursuant to the by-laws of said corporations, stockholders representing one half of the capital stock of said corporations could call such special meetings upon petition. However, the *373 petitioners, though claiming to represent 52% of the stock, did not represent such interest unless the stock of the retiring stockholder (Dr. Jameson) was taken into consideration. The court, having determined that the Jameson stock had been illegally acquired, and having been acquired in fraud of the rights of said corporations, the petitioners in fact did not represent at least one half of the capital stock of said corporations and thus the mandamus proceedings were dismissed upon the merits. Here, clearly, the corporations were passive litigants and the interests of the defendant directors were not in conflict with those of said corporations. Furthermore, no such issue was raised during the trial. In the Garlen case (supra) the court held, during the litigation then pending, that independent counsel was necessary because it had not yet determined whether or not the corporation was a passive or active litigant. Since the litigation with which we are here concerned is over and done Avith, the need for independent counsel can now be seen to have been unnecessary, and therefore the action of the board of directors may be deemed proper even though, had the question been raised during the pendence of the litigation, independent counsel would have been required.
As to the question of the legal fees paid by the corporations being excessive and beyond the fair value for the services rendered, the court took many factors into consideration: standing of counsel at the Bar, their experience, testimony as to the value of the services rendered, the results obtained, time involved, the appeals taken, time spent in the preparation of briefs. These trials consumed 15 court days, many of which started at 9:30 a.m. and proceeded to 5:00 p.m., and AAthile only 15 days were so spent, the trial extended over a period of one month, which prevented counsel from attending to other matters or litigation. The printed trial record is bound in three volumes. Many motions Avere made in connection with the appeals. As a result of this litigation, the corporations were put in a position of acquiring 515 units of said stock at a figure of $66.67 per unit whereas the book value of same was $90 per unit. More important than the $12,000 so saved, the corporations were able to resell these shares to other doctors, who thus, having obtained a proprietory interest, would consequently refer patients to this hospital for treatment and thus produce revenue for the corporations. The boards of directors were duty bound to redress wrongs to the corporations and protect the interests of the corporations and their stockholders and in the exercise of their discretion were entitled to counsel and to pay a fair fee for such services. The boards of directors are *374 empowered to hire counsel and pay a fee irrespective of the form of the action or the fact that no fund was brought into . court (Sprague v. Ticonic Bank, 307 U. S. 161; Matter of Allen v. Chase Nat. Bank, 180 Misc. 259). I find as a fact that the fees paid to counsel and the reimbursement made to a director who instituted the specific performance action were fair and reasonable and not excessive.
The remaining issue to be determined was whether the sale of 80 units of stock sold to other doctors was at a fair price. These units were sold at a price of $100 each. The book value of said units was $140 each. These sales were made with the approval of the board of directors and ratified by the stockholders. A committee of the board was set up to screen the prospective purchasers.
Admittedly all the purchasers were men of standing in the medical profession. It was also shown that the census of the hospital was lessened when disgruntled directors (losers in the previous litigation) sent their patients elsewhere for hospitalization. It was necessary to inject new blood. Book value is not the sole determinative in the evaluation of stock. The prospect of bringing in a new group of doctors who would refer patients to the hospital is a valuable consideration. The board of directors has discretionary powers in the management of the corporation and the court cannot substitute its judgment for those duly elected to such positions of trust and confidence, so long as their judgment is not tainted with fraud or collusion. There has been no evidence of fraud or collusion and the matter was openly discussed at the board meeting and at the meeting of stockholders, where such action had been approved and ratified. Book value of corporate stock is entitled to little, if any, weight in determining true value (Diston v. Loucks, 62 N. Y. S. 2d 138, affd. 264 App. Div. 758) and many other factors must be taken into consideration (Benson v. Braun, 8 Misc 2d 67, 71). The court finds that $100 a unit was a fair and reasonable price. Judgment will be entered dismissing the complaint.