**S. D. BENDALIN, Petitioner,**

v.

**Robert R. DELGADO, Sr., Respondent.**

**No. A–11231.**

Supreme Court of Texas.

Oct. 5, 1966.

Gerald B. Shifrin, El Paso, for petitioner.

Lipscomb, Fisk & Cox, El Paso, for respondent.

WALKER, Justice.

This began as a suit by Robert R. Delgado, Sr., respondent, for specific performance of an alleged oral contract whereby S. D. Bendalin, petitioner, agreed to purchase, at an unspecified price, respondent's fifty shares of stock in Consumers Wholesale Lumber Company. After the verdict but before judgment, respondent filed a trial amendment which asked alternatively for specific performance or damages. In response to Special Issues Nos. 1 and 2, the jury found: (1) that petitioner did agree to purchase the stock; and (2) that the reasonable value of the stock on February 21, 1962, was $2,867.44. On the basis of these findings[1], the trial court rendered judgment in respondent's favor for $2,867.44, and the Court of Civil Appeals affirmed. 397 S.W.2d 889.

On the principal questions presented for decision we hold: (1) that specific performance is not precluded by the fact that the parties did not fix a price for the stock; and (2) that there is no evidence to support the jury's finding that the reasonable value of the stock on February 21, 1962, was $2,867.44. The judgments of the courts below are reversed, and the cause is remanded for a new trial.

Petitioner was a large stockholder, director and president of Consumers Wholesale Lumber Company. Respondent was employed as general manager of the corporation in 1960. At petitioner's urging respondent decided in August of that year to buy fifty shares of Consumers stock owned by one McCutcheon, who had preceded respondent as general manager of the company. On September 28, 1960, petitioner and respondent drove together to the El Paso National Bank to consummate the purchase. Respondent testified that en route to the bank petitioner orally agreed to buy the fifty shares of stock from respondent if the latter's employment with

---

1. Respondent's motion to disregard the jury's answers to a number of other issues was granted by the trial court, and there is no contention that this action was improper.

Consumers ever terminated. Nothing was said, however, about the price petitioner was to pay respondent for the stock. Respondent further testified that he would not have bought the stock from McCutcheon if petitioner had not agreed to purchase the same. Petitioner insists that he made no such agreement, but this conflict in the evidence was resolved by the jury in respondent's favor. Respondent bought the fifty shares of stock from McCutcheon for $5,000.00 and continued to work for Consumers until February 21, 1962. At that time he terminated his employment and called upon petitioner to purchase the stock. Petitioner refused, and respondent instituted the present suit.

■ "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding." 1 Corbin, Contracts, 2nd ed. 1963, § 95. Thus, to be enforceable, a contract must be sufficiently certain to enable the court to determine the legal obligations of the parties thereto. Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940. It has often been said, moreover, that a contract which does not fix the price or consideration or provide an adequate way in which it can be fixed is too incomplete to be specifically enforceable. See 81 C.J.S. Specific Performance, § 35 and authorities there cited.

There are decisions which seem to support the general proposition that specific performance will not be granted unless the parties have expressly agreed upon the price or a means of determining the same. See Zimmerman v. Rhoads, 226 Pa. 174, 75 A. 207; Barnes v. Cole, 77 W.Va. 704, 88 S.E. 184; Conos v. Sullivan, 250 Mass. 376, 145 N.E. 529. Practically all of the cases in which this rule has been stated, however, were actions for specific performance of contracts for the sale or lease of land. The requirement that the price be stipulated by the parties appears to

have arisen, in some instances at least, from the provisions of the statute of frauds. See King v. Stanley, 32 Cal.2d 584, 197 P.2d 321; R. F. Robinson Co. v. Drew, 83 N.H. 459, 144 A. 67; Sturm v. Dent, 141 Miss. 648, 107 So. 277; Wiley v. Robert, 31 Mo. 212. In Fogg v. Price, 145 Mass. 513, 14 N.E. 741, the bill was for specific performance of a lease covenant that " 'if the premises are for sale at any time, the lessee shall have the refusal of them.' " It was held that the action would not lie. After noting that the contract neither fixed the price nor provided the way it should be fixed, the court stated that the agreement, when considered as a contract to sell, did not satisfy the statute of frauds and apart from the statute was not such a contract as equity could specifically enforce. The opinion then continues:

"It may be said that the contract does mean that the lessor will deal with the lessee on the same terms as with any one else or at least will not discriminate against him; that the lessor has now fixed his price by a sale; and that, as the purchaser had notice of the contract, the defendants have removed the difficulties in the way of specific performance by their own conduct. It might be that the remedy would do substantial justice as against the lessor, but, in order to do it, a term would have to be added which is not in the contract. * * * The statute of frauds remains unsatisfied, notwithstanding what has happened."

The failure of the parties to reach some understanding as to price often indicates that there has been no meeting of the minds. In other cases specific performance has been denied where the parties evidently intended to make a binding contract but overlooked some stipulation which could not fairly be supplied by implication. See American Mining Co. v. Himrod-Kimball Mines Co., 124 Colo. 186, 235 P.2d 804. Our decision in Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614, falls into that category. In still other cases the courts

have been unwilling to fix the price when the contract provided that it should be determined in a particular manner. See Fry, Specific Performance, 6th ed. 1921, § 355 et seq.

Where the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced. In such a case it will be presumed that a reasonable price was intended. See United States v. Swift & Co., 270 U.S. 124, 46 S.Ct. 308, 70 L.Ed. 497; Paschal v. Hart, Tex.Civ.App., 105 S.W.2d 337 (no writ); Burger v. Ray, Tex.Civ. App., 239 S.W. 257 (wr. dis.); 1 Williston, Law of Contracts, 3rd ed. 1957, § 41. As pointed out by Professor Prosser, "it seems fair to say that in most cases the parties clearly intend to make a binding agreement, with the price left open, and the court does violence to their intention, and injustice to one of them, if the agreement is defeated. Unless we are to assume that they are unreasonable men, probably the nearest approximation to their actual intention which the court can offer is a binding agreement at a reasonable price. In all cases where the price is left open, and a contrary intention does not clearly appear, such an interpretation is highly desirable." Prosser, Open Price in Contracts for the Sale of Goods, 16 Minn.L.R. 733, 790. See also 1 Corbin on Contracts, 2nd ed. 1963, § 97.

Cases in which a reasonable price has thus been implied are ordinarily suits to recover damages and involve contracts for the sale of goods or the rendition of services. No sound reason has been suggested, however, for applying a different rule to an agreement for the sale of corporate stock, and it seems to us that a court of equity should be as ready and able to invoke the standard of reasonableness as a court of law. Petitioner insists that a greater degree of certainty is required

in an action for specific performance than in a suit for damages. Statements to that effect can be found in the opinions of many courts, but the doctrine clearly is not a rule of universal application. See 12 Tex.Law Rev. 359. Determination of the contract price is essential to the granting of relief by way of either damages or specific performance. Where certainty as to the price is concerned, therefore, a court of law must be as exacting as a court of equity.

The American Law Institute recognizes that specific performance will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty the obligations of each party and the conditions under which performance is due, but it also points out that "the usual aids to interpretation will be availed of by the court, just as in the case of enforcement by other remedies. Expressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact." Restatement of the Law of Contracts, § 370 and Comment c thereunder. See also Pomeroy, Specific Performance of Contracts, 3rd ed. 1926, § 148. We accordingly hold that the absence of an express agreement as to price in the present case is not fatal to the maintenance of an action for specific performance. This disposes of petitioner's first six points of error.

By his seventh and eighth points, petitioner asserts that there is no evidence to support the jury's finding that the value of the stock was $2,867.44, or $57.35 per share, at the time respondent's employment with Consumers terminated. Consumers was a small, closely held corporation, and there was no market for its stock. The par value of the stock was $100.00 per share, and respondent introduced a balance sheet showing that its book value on December 31, 1961, was $63.22 per share. Book value is entitled to little, if any,

weight in determining the value of corporate stock, and many other factors must be taken into consideration. See Warner v. E. C. Warner Co., 226 Minn. 565, 33 N.W.2d 721; Marnik v. Northwestern Packing Co., 335 Ill.App. 568, 82 N.E.2d 195; Barsan v. Pioneer Savings & Loan Co., 163 Ohio St. 424, 127 N.E.2d 614; Kelley v. 74 and 76 West Tremont Ave. Corp., 24 Misc.2d 370, 198 N.Y.S.2d 721; O'Neal, Close Corporations § 7.24.

On the present record the book value of the Consumers stock constitutes nothing more than a scintilla of evidence as to its reasonable worth. The company had lost a substantial amount of money since its organization, and ·evidently was still losing money in 1962. Petitioner testified that its assets were not worth book value. He was the only witness who undertook to estimate the value of the stock, and according to his testimony it was worth only ten or fifteen cents on the dollar. His testimony in this respect could be disregarded by the trier of fact, but no attempt was made to prove the actual value of the assets or the rate of ‚earnings or losses at or about the time respondent left the company's employ. It does appear that on an undisclosed date in 1962 petitioner bought 100 shares of stock for $35.00 per share, and some time in 1963 he bought another 100 shares for ten cents per share. He claimed that the relatively high price paid in the earlier of these transactions was due to his sympathy for the seller, whose husband had died recently, and that the low price paid in the later transaction was attributable to the seller's desire to take a tax loss. The foregoing is a summary of all the evidence tending to establish the value of the stock. In our opinion it is sufficient to warrant submission of Special Issue No. 2, but the record is devoid of any evidence to support the conclusion that the stock was worth as much as $57.35 per share as found by the jury.

Petitioner's ninth and final point presents a question which probably will not arise on another trial. The judgments of the courts below are accordingly reversed, and the cause is remanded to the district court for a new trial.