**Affirm and Opinion Filed September 12, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-00191-CV

**THOMAS REDWINE, AS TRUSTEE OF THE MARTHA T. LATTIMORE LIVING TRUST, AND INTERVENOR, ST. LUKE'S EPISCOPAL CHURCH OF DENISON, TEXAS, Appellants**

**V.**

**STORMY LATTIMORE CANSLER, INDIVIDUALLY AND AS TRUSTEE OF THE 2014 MARTHA T. LATTIMORE LIVING TRUST; JOHN VICTOR LATTIMORE, JR.; RICHARD CANSLER; NORTHWEST HOLDINGS CREEKMORE, LLC; AMERICAN BANK OF TEXAS; AND RAYMOND JAMES FINANCIAL SERVICES, INC., Appellees**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-15-1547**

## MEMORANDUM OPINION

Before Justices Schenck, Molberg, and Pedersen, III
Opinion by Justice Pedersen, III

Appellants Thomas Redwine, as Trustee of the Martha T. Lattimore Living Trust (Redwine), and St. Luke's Episcopal Church of Denison, Texas (St. Luke's) challenge two orders of the trial court signed January 11, 2021: the Order Denying Intervenor St. Luke's Episcopal Church's Request for Declaratory Relief, and the Order Granting Defendant Stormy Cansler's Second Amended Motion to Enforce

Mediated Compromise Settlement Agreement and Dismiss Case. In a single appellate issue, Redwine and St. Luke's argue that the trial court denied them due process by deciding a breach of contract issue on submission without a summary judgment proceeding or trial. We affirm the trial court's orders.

**Background**

This dispute originated following the death of Martha Lattimore (Lattimore) in August 2015, when it was learned that she had identified the same property as the corpus of two trusts with different beneficiaries. In May 2014, Lattimore executed one trust, naming Redwine trustee and naming St. Luke's the sole residuary beneficiary. In August 2014, however, Lattimore executed another trust, identifying substantially the same corpus, but this time naming her daughter, appellee Stormy Lattimore Cansler (Cansler), trustee and naming Cansler and her brother, appellee Victor Lattimore, Jr., the residual beneficiaries.

*The Mediated Settlement Agreement*

The parties signed a Mediated Settlement Agreement (the MSA) in February 2016.[1] Along with conflicting trusts, Lattimore had also executed more than one will. In the MSA, the parties agreed on which will and which trust—as modified by the MSA—would be operative. The parties agreed to dismiss their will contest, a guardianship proceeding, and this case, which the MSA called the Trust Case. The

---

[1] The MSA is confidential and is filed under seal in this Court. We identify only the terms necessary to resolve the issues before us.

MSA intended only "proceedings necessary to complete and enforce the terms and provisions of [the MSA]" to continue. Appellees' counsel notified this trial court that the parties had settled, that the court would need to terminate the trust in the future, that "as a result of settlement, no motions for summary judgment would be filed by any parties," and that the trustee would continue paying the bills of the trust as the court had directed and the parties had agreed in the MSA.

The MSA directed that before any distributions were made from Lattimore's estate, the debts and obligations owed by the estate were to be paid, including "[a]ny and all obligations due and owing to the Internal Revenue Service by Martha Lattimore, her Estate or her Trust." The parties' filings establish that, at the time of the settlement, all were aware of the existence of a significant federal tax lien. After all debts were paid, the trust would terminate, and disbursements would be made according to the terms of the MSA.

The MSA had enough moving parts that—while certain MSA-related requirements proceeded—this case sat relatively quietly for some time. In 2018, St. Luke's intervened in the suit seeking an accounting from Cansler. (Suit on the May 2014 trust had initially been brought by its trustee, Redwine.) And in 2020, there are signs of discovery issues in the record.

*The Motions to Enforce the MSA*

On April 27, 2020, St. Luke's filed its Plea in Intervention, Motion to Compel Accounting and Motion to Enforce Settlement Agreement, or, in the Alternative, to

–3–

Remove Stormy Cansler as Fiduciary. Following its statement of the basis for intervention and the request for accounting, the motion stated:

> St. Luke's seeks enforcement of the terms of the [MSA]. Under paragraph 3.13 of the [MSA], the parties contemplated that the Martha T. Lattimore Living Trust dated August 21, 2014 would be terminated prior to [payment of a specific promissory note. The party at issue] has paid off the promissory note and the proceeds are currently under the complete control of [Cansler]. St. Luke's requests the Court enter an order directing that [St. Luke's agreed-upon percentage] of the trust funds be paid over to St. Luke's for its control over the funds that it received pursuant to the [MSA]. This request is made especially in light of the conduct by [Cansler's] refusal and failure to produce an accounting. In the alternative, St. Luke's requests that the Court enter its order directing [Cansler] to turn over one-hundred percent (100%) of the trust funds to a fiduciary beyond the control of [Cansler].

The motion was heard on June 17, but discussion was limited to discovery matters already resolved and to the question of whether Cansler had provided a sufficient response to St. Luke's requests for an accounting. The trial judge suggested the attorneys file motions if they had specific requests for dismissal or for discovery and then file specific responses to any motions filed.[2]

Cansler complied with the judge's suggestion almost immediately, filing her Amended Motion to Enforce Mediated Compromise Settlement Agreement, Dismiss Case, and Request for Expedited Hearing. Cansler complained of appellants' failure to have this case (and the will contest) dismissed as the MSA required. Cansler asked the court "to enforce the [MSA], and incorporate the terms of the [MSA] in the

---

[2] We note that the hearing was held on the Zoom digital platform. In the summer of 2020, the Covid-19 pandemic remained at emergency levels across the United States, including Dallas County.

court's final judgment disposing of this case." Cansler filed a Second Amended Motion to Enforce that specifically cited and quoted the MSA provisions on which she relied. This is the motion on which the trial court ruled.

St. Luke's filed its Response to Cansler's Amended Motion to Enforce Mediated Compromise Settlement Agreement, Dismiss Case, and Request for Expedited Hearing and St. Luke's Request for Declaratory Relief.

- St. Luke's argued against dismissal, relying on (1) the MSA provision calling for continued court oversight necessary to complete and enforce terms of the MSA, and (2) a letter from Cansler's counsel outlining post-settlement steps that directs the Trust Case be dismissed *after* tax liability is resolved and the trust is terminated.

- St. Luke's also requested that a constructive trust be imposed on the Estate funds being held by Texas Citizens Bank as an acknowledgement that St. Luke's was the beneficial owner of a specific percentage of those funds pursuant to the MSA.

- St. Luke's requested "declaratory relief" based upon its expressed concern that the MSA provided no date certain for distribution of its percentage of Lattimore's estate. The response posited that limitations would run on the federal tax lien on August 12, 2025. It asked the court to declare that:

> in the event the IRS takes no action to levy on the assets of the Martha Lattimore Living Trust on or before August 12, 2025, then the [MSA] shall be construed as if the IRS tax lien has been

> "fully satisfied" and St. Luke's shall be entitled to a disbursement of its [ ] beneficial ownership percentage of the Martha Lattimore Living Trust on August 13, 2025.

The Response closed with a prayer that the trial court set for hearing Cansler's Second Amended Motion to Enforce, the earlier filed St. Luke's Motion to Enforce, and St. Luke's Request for Declaratory Relief.

*Proceedings on the Motions to Enforce and Request for Declaratory Relief*

On July 23, 2020, the trial court sent a letter to the parties stating in relevant part:

> The Court intends to consider the [ ] pending issues in this matter by submission in the near to immediate future. If there is additional information or evidence the parties wish the Court to consider should be submitted immediately. However, before doing so, the Court expects the parties to mediate by August 31, 2020.

The parties did mediate again, but the mediation was declared an impasse.

Shortly thereafter, on August 17, counsel for appellants sent a letter to the trial court stating that "from St. Luke's perspective, there are two salient questions concerning the [MSA] that are before the Court on the pending motions of both parties." Counsel identified the first issue as "the time of performance," which he explained meant "a date certain on which St. Luke's would be disbursed its settlement funds." The letter again addressed appellants' proposal that the trial court declare the day after limitations would run on the federal tax lien as that date certain. The second issue, according to counsel's letter, was "notice to the financial institution that is holding the settlement funds" concerning the fact that St. Luke's

–6–

was a beneficial owner of an agreed-upon percentage of the funds held. This notice could be provided, counsel urged, by imposition of a constructive trust upon the Estate's funds. Counsel's letter ended with this acknowledgement:

> The Court has placed the parties on notice that it will take up the various pending motions under advisement and proposed the parties submit whatever additional information we wished for the Court to consider in making its rulings on those motions. This writing contains St. Luke's additional information it wishes for the Court to consider in making its rulings.

The letter raised no objection to the court's considering and deciding the pending motion by submission.

On September 25, counsel for Cansler responded by letter to the St. Luke's submission, stating that—because the parties and court could not be certain when the tax lien issue would be resolved—no date certain could be inserted in the MSA. Cansler asserted that she had complied with the MSA and asked the court to enforce it by dismissing the case.

On January 4, 2021, the trial court notified the parties by letter that it intended to grant Cansler's Second Amended Motion and to deny St. Luke's Request for Declaratory Relief "at this time." The court explained,

> The Court declines to add a time requirement to the negotiated settlement agreement. However, if necessary, the Court will entertain litigation in the future after limitations run on the IRS Tax Lien, and [concerning] the reasonableness of any actions in fulfilling the intent of the settlement agreement.

Then, on January 11, the trial court signed its orders from which St. Luke's and Redwine appeal. Those orders were limited in nature. In expansive motions and

letter-briefs, both parties requested further relief, which the trial court denied by omission in its two orders. The trial court made only two rulings: it refused to imply a date certain for distribution of funds in the MSA, and it dismissed the case.

Appellants filed a Motion to Vacate Void Orders, citing cases that address a party's withdrawal of consent to a settlement agreement or revoking a settlement agreement, and challenging the trial court's resolution of the pending motions by submission rather than by a summary judgment or trial process. The motion was overruled by operation of law.

This appeal followed.

**Discussion**

Appellants raise a single appellate issue, asserting that:

> The district court abused its discretion by denying the Appellants due process of law afforded by the United States Constitution, Texas Constitution and the Texas Rules of Civil Procedure by deciding a breach of contract claim by submission: a decision without a summary judgment proceeding, bench or jury trial.

*The Nature of the Trial Court's Rulings*

At the outset, we reject the underlying premise of this issue, i.e., that the trial court "decid[ed] a breach of contract claim." It is undisputed that the parties entered into a binding agreement when they signed the MSA. But for the court to have a breach of contract claim before it in this case, at least one of two events must have occurred before the court dismissed the case: one of the parties pleaded that the other breached the MSA, or one of the parties revoked the MSA.

Our record does not contain a petition, an answer, or a counterclaim that was added or amended after February 1, 2016, the date of the MSA. No party placed a breach of MSA claim before the trial court in this case. We will not conclude that rhetorical challenges to another party's performance of an agreement—or lack of performance—in the course of argument or other filings are sufficient to plead a claim for breach of contract.[3] *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) ("Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach.").

Moreover, while appellants cite authorities concerning revocation of—or withdrawing consent to—a settlement agreement, they did neither in this case. A party may revoke his *consent to settle a case* any time before the judgment is rendered. *Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex. 1983) (emphasis added). But here, appellants state in their briefing: "To be perfectly clear, Appellants do not reject or disaffirm the validity of the Settlement Agreement." And at the close of their briefing, appellants make clear the nature of their appellate

---

[3] For example, appellants' opposed dismissal of the Trust Case based on the MSA's requirement of proceedings to complete and enforce its terms. This opposition led appellees to charge that appellants were "in breach" of the MSA, which required dismissal of the Trust Case. But appellees did nothing to advance this accusation of breach beyond rhetorical flourish. The disagreement was resolved by interpretation of the MSA, not by institution of a breach of contract suit.

argument: "Appellants still do not know when St. Luke's will be paid the [ ] percent of approximately [ ] dollars that it was and is willing to accept under the settlement agreement." Nothing in the record or briefing before us indicates that appellants ever intended to revoke the MSA and withdraw their consent to the settlement of the case that assures them that recovery. Indeed, rather than revoking the MSA, appellants—like appellees—filed a motion to enforce the MSA.

Appellants' complaint lies not with the parties' settlement of the case, but with the trial court's rulings dismissing the Trust Case and denying declaratory relief. When appellants talk about "withdrawing consent," that is the "consent" to which they refer in their briefing:

> Appellees' trial counsel and the trial court were aware, early on, that Appellants did not consent to dismissal of this litigation well before the trial court ruled on the Appellees' motion to enforce the settlement agreement by dismissing the case, while ignoring Appellants' request for a declaratory judgment.

Appellants disagreed with the trial court's rulings, but the record contains no revocation of the MSA.

Nevertheless, appellants contend that the nature of the trial court's January 11 rulings required either summary judgment or trial procedures to be followed. We disagree because those rulings—rather than resolving a breach of contract claim—were limited to interpreting the MSA. In fact, appellants do not directly challenge the substance of either of the court's rulings; instead they challenge the procedure employed by the trial court, i.e., they contend that ruling on the motions by

–10–

submission denied them due process. We look at the substance of the rulings, therefore, only to determine whether they were the type of rulings properly made by submission.

(1)   Dismissing the Trust Case

Appellees' motion sought dismissal of the Trust Case according to the terms of the MSA. Paragraph 3.7 of the MSA specifically required Redwine to dismiss this case. Appellants opposed the dismissal, relying on paragraph 3.17 of the MSA, which called for the dismissal of all pending litigation "save and except for proceedings necessary to complete and enforce the terms and provisions of this [MSA] as a part of the administration of the Estate of Martha Lattimore, Deceased." The trial court took both provisions into account, dismissing the case but assuring the parties that "if necessary, the Court will entertain litigation in the future after limitations run on the IRS Tax Lien, and [concerning] the reasonableness of any actions in fulfilling the intent of the [MSA]." Thus, the trial court stood ready "to complete and enforce the terms and provisions" of the MSA when the time came for distribution or should any party take some other unreasonable action concerning the MSA. In the meantime, given that the parties had settled all claims underlying the Trust Case, the trial court could properly grant appellees' motion and dismiss the case based on its interpretation of the MSA.

## (2) Declaratory Relief Regarding Date of Distribution

Appellants' motion acknowledged that the MSA called for distribution of its agreed-upon share of the Estate's assets only after all debts and obligations of the Estate had been resolved. At the time they filed the motion, the one outstanding obligation was the IRS tax lien. Appellants briefed the trial court concerning the statute of limitations for such a lien. They identified August 12, 2025 as the last possible date the IRS could bring an enforcement action to recover on its lien, and they asked the court to set the following day, August 13, 2025, as the date certain for distribution of the Estate's assets. The trial court could have determined that August 13, 2025 would comply with the MSA in one circumstance, i.e., if the IRS did not file an enforcement action and efforts to resolve the lien before that date—which the MSA has set in motion—were unsuccessful. However, the date would be in conflict with the MSA if the lien were resolved earlier (which would otherwise allow St. Luke's to receive its distribution before August 13, 2025) or if the IRS actually did institute an enforcement action (which would again require St. Luke's to wait for resolution before it could receive its distribution). If it is construing an agreement to avoid forfeiture, a court may imply terms that can reasonably be implied, but it may not rewrite the parties' agreement. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016). In the end, the trial court could have concluded that St. Luke's proposal did not offer a more appropriate time for distribution than the MSA did.

–12–

Likewise, the court could have concluded that the lack of a specific date of performance did not invalidate the MSA for lack of definiteness. "[T]o be enforceable, a contract must be sufficiently certain to enable the court to determine the legal obligations of the parties thereto." *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex. 1966). The essential terms for a settlement agreement are the amount of compensation and the liability to be released. *Disney v. Gollan*, 233 S.W.3d 591, 595 (Tex. App.—Dallas 2007, no pet.) (citing *Padilla v. LaFrance,* 907 S.W.2d 454, 460–61 (Tex. 1995)). Appellants do not contend that either of those terms of the MSA is indefinite. And the trial court's January 4, 2021 letter to the parties establishes that the trial court understood when distributions were to be made. Thus, the court could decide that the MSA, without clarification, was sufficiently definite to determine the legal obligations of the parties, and it could deny appellants' motion. *See Bendalin*, 406 S.W.2d at 899.

The issues decided by the trial court were matters of contract interpretation, which—at its heart—is a legal issue. Interpretation of an unambiguous contract is an issue of law for the court. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). Thus, these decisions were properly before the trial court and were appropriate for decision by submission.

We conclude that the trial court did not decide a breach of contract issue, because no such issue was before it: no party pleaded a breach of the MSA, and no

party revoked the MSA. Instead, the parties raised legal issues of interpretation of the MSA. The trial court did not err in deciding those issues by submission.

*Due Process*

Appellants' single issue contends that they were denied due process when the trial court made its rulings by submission. "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Roper v. Jolliffe*, 493 S.W.3d 624, 636 (Tex. App.—Dallas 2015, pet. denied) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).

It is undisputed that all parties had notice of the trial court's intention to decide the motions to dismiss and for declaratory relief by submission. On July 23, 2020, the trial court sent a letter to trial counsel stating:

> The Court intends to consider the other pending issues in this matter by submission in the near to immediate future. If there is additional information or evidence the parties wish the Court to consider should be submitted immediately. However, before doing so, the Court expects the parties to mediate by August 31, 2020.

The parties did mediate again, and both parties submitted letter briefs to the trial court making reference to this letter. Thus, notice was acknowledged by both parties.

The trial court did not hold an in-person hearing on these motions, but appellants have not cited us to authority requiring such a hearing. The parties had a meaningful opportunity to be heard: their arguments and evidence were invited by the trial court, and both parties submitted letter briefs in response to the invitation. Nothing in the record suggests that either party had evidence that was not offered

–14–

and considered in that process.[4] And, importantly, St. Luke's assured the trial court in its submission that its concern about a date certain for performance "is an issue that requires no court hearing." Instead, St. Luke's wrote, "The question of time of performance for the disbursement simply requires the Court to review the four corners of the settlement agreement to see if it can glean the intent of the parties as to when they intended the disbursement date to be." Appellants have likewise assured this Court in their briefing that no hearing was necessary.

We have concluded that the issues decided by the trial court were matters of contract interpretation. *See SAS Inst., Inc.*, 167 S.W.3d at 841. Thus, after the parties were given notice and a meaningful opportunity to be heard on the issues, the decisions were properly before the trial court and were appropriate for decision by submission. We conclude appellants were not denied due process in the court's handling of these motions.

We overrule appellants' single issue.

**Conclusion**

We affirm the trial court's January 11, 2021 Order Denying Intervenor St. Luke's Episcopal Church's Request for Declaratory Relief and Order Granting

---

[4] St. Luke's requested an evidentiary hearing after the parties had submitted their letter briefs. But it indicated the request was solely to make a formal offer of the same evidence it had offered by letter. The trial court did not require such a formal offer; nor do we under these circumstances.

We note again the fact that these events were taking place at the height of a pandemic, during which courts were discouraged by the Texas Supreme Court from engaging in any conduct that could pose a danger of infection to the court, its staff, or the litigants.

Defendant Stormy Cansler's Second Amended Motion to Enforce Mediated Compromise Settlement Agreement and Dismiss Case.


210191f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THOMAS REDWINE, AS
TRUSTEE OF THE MARTHA T.
LATTIMORE LIVING TRUST,
AND INTERVENOR, ST. LUKE'S
EPISCOPAL CHURCH OF
DENISON, TEXAS, Appellants

No. 05-21-00191-CV        V.

STORMY LATTIMORE
CANSLER, INDIVIDUALLY AND
AS TRUSTEE OF THE 2014
MARTHA T. LATTIMORE LIVING
TRUST; JOHN VICTOR
LATTIMORE, JR., RICHARD
CANSLER; NORTHWEST
HOLDINGS CREEKMORE, LLC;
AMERICAN BANK OF TEXAS;
AND RAYMOND JAMES
FINANCIAL SERVICES, INC.,
Appellees

On Appeal from the 397th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. CV-15-1547.
Opinion delivered by Justice
Pedersen, III. Justices Schenck and
Molberg participating.

In accordance with this Court's opinion of this date, the trial court's January 11, 2021 Order Denying Intervenor St. Luke's Episcopal Church's Request for Declaratory Relief and January 11, 2021 Order Granting Defendant Stormy Cansler's Second Amended Motion to Enforce Mediated Compromise Settlement Agreement and Dismiss Case are **AFFIRMED**.

It is **ORDERED** that appellees Stormy Lattimore Cansler, Individually and as Trustee of the 2014  Martha T. Lattimore Living Trust; John Victor Lattimore,

–17–

Jr., Richard Cansler; Northwest Holdings Creekmore, LLC; American Bank of Texas; and Raymond James Financial Services, Inc., recover their costs of this appeal from appellants Thomas Redwine, as Trustee of the Martha T. Lattimore Living Trust, and Intervenor, St. Luke's Episcopal Church of Denison, Texas.

Judgment entered this 12th day of September, 2022.